IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIAXING ZICHI TRADE CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> LING YANG, d/b/a Emperor Goose, CAO ZI QI, d/b/a FADSHOW, and SHANSHAN MA, d/b/a Raddzo, and DOES 1-50, inclusive, <br><br> Defendants. | Case No.: 1:20-cv-00973 <br><br> Hon. Martha M. Pacold <br><br> Magistrate Judge Hon. Young B. Kim |

## DECLARATION OF JIAWEI QIU

I, Jiawei Qiu, declare and state as follows:

1. I am the CEO of Jiaxing Zichi Trade Co., Ltd, Plaintiff in the above-named action and I make this declaration in support of the *Ex Parte* Motion for Entry of a Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by Electronic Means Order (the "Motion") based upon my personal knowledge, except where stated otherwise. I further declare that I could and would competently testify to the following facts if called upon to do so.

2. I founded Jiaxing Zichi Trade Co., Ltd in 2012 and have been directly involved with and in charge of Jiaxing Zichi Trade Co., Ltd's brand enforcement policies. I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, Jiaxing Zichi Trade Co., Ltd's trademarks, sales, advertising and

1

marketing, and media coverage. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff Jiaxing Zichi Trade Co. Ltd is a company organized and existing under the laws of People's Republic of China, having its principal place of business at 6th Floor, Tower 9A, No. 36 Changsheng South Rd, Jiaxing, Zhejiang Province, China.

4. Plaintiff has been designing, developing and marketing high-quality and stylish down jackets for many years. Plaintiff is the original designer, manufacturer, and distributor of the recent hit-product, the Orolay® jacket. In 2013, Plaintiff debuted its new Orolay® Women's Thickened Down Jacket (hereinafter "the Orolay® jacket") in the United States, which is now sold throughout the U.S. through its Amazon store and on Plaintiff's own website.

5. The Orolay® jacket is a high-quality down jacket with unique and distinctive designs, featuring voluminous paneling, multiple zippers (including side zippers that can be unfastened for a more stylish and relaxed fit), oversized pockets and a cocoon-like shape that is shorter in the front and longer in the back. Since its launch, the Orolay® jacket has consistently and continuously been sold in the marketplace and they have always included those design features that constitute its trade dress.

6. The Orolay® mark is registered in 2015, and Plaintiff has since become the exclusive authorized distributor of products bearing the Orolay® Trademark (U.S. Registration Number 4778909), including the celebrated Orolay® jacket. The Orolay® trademark has been used exclusively by Plaintiff for many years and have never been abandoned.

7. Orolay's designers settled on specific elements of the Orolay® jacket to create an identifiable look and feel that would distinguish the Orolay® jacket from other winter clothing in the marketplace and to signify to the consumers that the product comes from Orolay®.

8. The design elements of the Orolay® jacket are not selected to increase quality or reduce costs. There are alternative designs that are less expensive to produce.

9. Plaintiff could have simplified the designs to save costs, and it actually manufactures and sells down jackets that cost less to produce than the Orolay® jacket.

10. Further, although the Orolay® jacket is made with high-quality materials, the particular design was not chosen to improve quality – something determined by the quality of the materials chosen, and the manufacturer's machinery, skill and care with which the products are manufactured, in line with Plaintiff's stringent quality control standards. There are numerous ways to design a down jacket that would have increased the quality of the product, but Plaintiff selected the particular design primarily to distinguish its products from those of others.

11. The design elements, including the shape, appearance, texture, and feel of the Orolay® jacket, are aesthetic features specifically designed to distinguish the Orolay® jacket from other down jackets rather than to provide a particular function. There are numerous ways to design a down jacket that would have functioned equally well in keeping people warm in cold days and/or allowing people to store small items. Plaintiff itself sells numerous lines of down jackets that are different from the Orolay® jacket.

12. Further, Plaintiff has never advertised any utilitarian advantages of its Orolay® jacket, other than those characteristics that hold true for most, if not all, down jackets (e.g., as a down jacket, it can keep people warm).

13. At no time has Plaintiff filed for a utility patent for the Orolay® jacket as a whole or any element thereof.

14. There are numerous alternative designs actually used and available to competitors to design a winter jacket without infringing upon Plaintiff's trade dress and trading off the goodwill garnered by Plaintiff in its Orolay® jacket.

15. Plaintiff has exerted an enormous amount of time, money and effort to extensively and continuously promote and utilize the Orolay® brand in conjunction with the designs for the Orolay® jacket in the United States and Illinois.

16. In 2020, Plaintiff has spent approximately $150,000 in advertising of the Orolay® jacket, resulting in over 74,000,000 advertising placements to consumers and a robust social media presence dedicated to the Orolay® jacket.

17. Plaintiff has made a deliberate effort to distinguish the Orolay® jacket from products of others by creating a website, Facebook page, Instagram Account, Twitter account, etc., dedicated solely to market and publicize the Orolay® jacket. In an effort to inform the public that the overall "look and feel" of the Orolay® jacket as coming from a single source, Plaintiff explicitly place the picture of the Orolay® jacket in conjunction with the Orolay® brand to suggest a connection between the trade dress and the Orolay® brand name.

18. As a direct result of these and other efforts in promoting and building its recognition in the marketplace, Plaintiff's product has exploded in popularity, creating substantial demand for and interest in the Orolay® jacket, and generating enormous goodwill in the Orolay® brand and designs in the United States.

19. Since its launch, Plaintiff has sold approximately 415,000 units of Orolay® jackets which have yielded millions of dollars of sales revenue in the U.S. The Orolay® jacket remained a number one best-seller for women's coats on Amazon.com for six years continuously. Popularly known as the "Amazon Coat", the Orolay® jacket has been reviewed over 17,000 times on

Amazon. By virtue of the success of the product, Plaintiff was named the most innovative Amazon seller in 2019. The Orolay® jacket is featured in various newspapers (including Reuters, New York Times and Wall Street Journal), magazines, online articles and popular social media platforms.

20. Because of Plaintiff's extensive efforts to distinguish its products and the resulting massive success and popularity of the Orolay® jacket, consumers have come to uniquely associate Plaintiff's high-quality Orolay® jacket with the brand Orolay®.

21. The Amazon reviews demonstrate and indicate that the unique and distinctive design of the Orolay® jacket has played a major role in the brand's success. For example, consumers have noted the following about the Orolay® jacket: "[the] cut is nice and unusual"; "[the] unique design looks really sharp", and "the design is not like one I've seen before. It has a slight bell shape to it, which surprisingly is very flattering with every kind of outfit;" and "[the] main reason I bought this coat was this part of the description... 'The bottom of the eiderdown garment adopts unique crumples. This was coupled with fashion design and manifested a unique practicability of magnificence but at the same time not too overt.'"

22. I am also informed and believe that the Orolay® jacket owes its popularity, in part, due to its high quality and rigorous quality control procedures that it undergoes.

23. Plaintiff's products have become so popular among, sought after by, and recognizable as a brand by the public that competitors like defendants started selling unauthorized merchandise that almost exactly copy the Orolay® jacket on Amazon.com. Specifically, Defendants' products have the same cocoon-shape which is shorter in the front and longer in the back, the same placement and style of the panels, the oversized pockets and zippers including the side zippers that can be unfastened, among other shared features.

24. Plaintiff has not licensed or authorized Defendants to use any of the Plaintiffs trademarks or trade dress, and none of the Defendants are authorized retailers of Plaintiff's genuine products.

25. Consumers have become confused about the source of the goods. For example, one Amazon reviewer mistakenly believed that Defendants' products were the legitimate Orolay® jacket: "I have been eyeing the Amazon coat for a while and wanted to get one – so I ordered this." As another example, one reviewer commented that she was confused by the label of the coat, which was not Orolay®, and that she wasn't sure if the seller has any connection with Orolay®.

26. Additionally, the quality of Defendants' down coats is vastly inferior. Amazon reviewers of Defendants' products have complained about the lack of quality control with respect to Defendants' products, including the inferior quality of zippers which got stuck all the time, the button popping off after one wear, and the seams being easily ripped apart.

27. My investigation indicates that Defendants likely come from China and they set up and operates Amazon stores that is accessible to United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold infringing products to residents of Illinois. Beyond that, Plaintiff is currently unaware of the true identities and locations of the Defendants, as well as the scope and volume of Defendants' counterfeiting operation, nor how many other Defendant internet stores are used to sell and distribute the infringing products.

28. Now that Plaintiff has invested so significantly in the development, advertising, and promotion of its products, Defendants can ride Plaintiff's proverbial coattails without having to undertake those same investments.

29. With Defendants' significant distribution network in the marketplace, this will cause great harm to Plaintiff's market share and profitability for the authentic Orolay® jacket. In fact, Plaintiff's sales of the Orolay® jacket in 2020 was 40% of that in 2019, despite an increase in its advertising budget, due to the significant counterfeiting activity on the Internet by infringers like Defendants.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the 18th day of March 2021 at Jiaxing, China.

*Jiawei Qiu*

Jiawei Qiu