# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WHAM-O HOLDING, LTD. and
INTERSPORT CORP. d/b/a WHAM-O,                    Case No.:  1:20-cv-04202

      Plaintiffs,                                                  Judge Thomas M. Durkin

v.                                                                     Magistrate Judge Sheila M. Finnegan

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

**PRELIMINARY INJUNCTION ORDER**

THIS CAUSE being before the Court on Plaintiffs, WHAM-O HOLDING, LTD. and

INTERSPORT CORP. d/b/a WHAM-O ("WHAM-O" or "Plaintiffs"), Motion for a Preliminary

Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiffs' Motion

for Entry of a Preliminary Injunction in its entirety against the defendants identified in Schedule

A (collectively, the "Defendants").

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since

the Defendants directly target their business activities toward consumers in the United States,

including Illinois.  "In the context of cases like this one, that means a plaintiff must show that each

defendant is actually operating an interactive website that is accessible in Illinois and that each

defendant has aimed such site at Illinois by standing ready, willing and able to ship its counterfeit

goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts

with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified*

*on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016). In this case, Plaintiffs have presented

screenshot evidence that each Defendant Internet Store is reaching out to do business with Illinois

1

residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can and do purchase products using counterfeit versions of Plaintiffs' trademarks. *See* Docket No. 11 which includes screenshot evidence confirming that each Defendant Internet Store does stand ready, willing and able to ship its counterfeit goods to customers in Illinois bearing infringing and/or counterfeit versions of the FRISBEE trademarks, U.S. Trademark Registration Nos. 4,046,202; 970,089 and 679,186 ("The FRISBEE trademarks").

THIS COURT FURTHER FINDS that injunctive relief previously granted in the Temporary Restraining Order ("TRO") should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of WHAM-O's previously granted Motion for a Temporary Restraining Order establishes that WHAM-O has a likelihood of success on the merits; that no remedy at law exists; and that WHAM-O will suffer irreparable harm if the injunction is not granted.

Specifically, WHAM-O has proved a *prima facie* case of trademark infringement because (1) the FRISBEE trademarks are distinctive marks and are registered with the U.S. Patent and Trademark Office on the Principal Register, (2) Defendants are not licensed or authorized to use the FRISBEE trademarks, and (3) Defendants' use of the FRISBEE trademarks is causing a likelihood of confusion as to the origin or sponsorship of Defendants' products with WHAM-O. Furthermore, Defendants' continued and unauthorized use of the FRISBEE trademarks irreparably harms WHAM-O through diminished goodwill and brand confidence, damage to WHAM-O's reputation, loss of exclusivity, and loss of future sales. Monetary damages fail to address such damage and, therefore, WHAM-O has an inadequate remedy at law. Moreover, the

public interest is served by entry of this Preliminary Injunction to dispel the public confusion created by Defendants' actions. Accordingly, this Court orders that:

1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily enjoined and restrained from:

 a. using the FRISBEE trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine FRISBEE product or not authorized by WHAM-O to be sold in connection with the FRISBEE trademarks;

 b. passing off, inducing, or enabling others to sell or pass off any product as a genuine FRISBEE product or any other product produced by WHAM-O, that is not WHAM-O's or not produced under the authorization, control or supervision of WHAM-O and approved by WHAM-O for sale under the FRISBEE trademarks;

 c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of WHAM-O, or are sponsored by, approved by, or otherwise connected with FRISBEE;

 d. further infringing the FRISBEE trademarks and damaging WHAM-O's goodwill;

 e. otherwise competing unfairly with WHAM-O in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for WHAM-O, nor authorized by WHAM-O to be sold or offered for sale, and which bear any of the FRISBEE trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit/Infringing FRISBEE products; and

h. operating and/or hosting at the Online Marketplace Accounts and any other online marketplace accounts registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the FRISBEE trademarks or any reproductions, counterfeit copies or colorable imitations thereof that is not a genuine FRISBEE product or not authorized by WHAM-O to be sold in connection with the FRISBEE trademarks.

2. Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as, but not limited to PayPal, WISH and Alipay, (collectively, "Marketplaces"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, shall within three (3) business days of receipt of this Order:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit and infringing goods using the

4

FRISBEE trademarks, including any accounts associated with the Defendants listed in Schedule A;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the FRISBEE trademarks; and

c. take all steps necessary to prevent links to the Defendant Online Marketplace Accounts identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Online Marketplace Accounts from any search index.

3. Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' Online Marketplace Accounts or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as Marketplaces, advertisers, Facebook, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including, but not limited to, PayPal, Alipay, Western Union, third party processors and other payment processing service providers, shippers, and online marketplace registrars (collectively, the "Third Party Providers") shall, within three (3) business days after receipt of such notice, provide to WHAM-O expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

a. The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

5

  b. the nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace Accounts;

  c. Defendants' websites and/or any Online Marketplace Accounts;

  d. The Defendant Online Marketplace Accounts registered by Defendants; and

  e. Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, PayPal, Alipay, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

4. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

5. PayPal, Inc. ("PayPal"), Context Logic, Inc.("WISH") and Alipay US, Inc. and its entities ("Alipay"), shall, within three (3) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites:

  a. Locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any

PayPal, WISH and Alipay accounts connected to the information listed in Schedule A hereto or the email addresses identified in Exhibit 2 to the Declaration of Todd Richards; and

b. Restrain and enjoin any such accounts or funds that are non-U.S. foreign based from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

6. Any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within three (3) business days of receipt of this Order:

a. Locate all accounts and funds connected to Defendants, or Defendants' Online Marketplace Accounts, including, but not limited to, any accounts connected to the information listed in Schedule A hereto or the email addresses identified in Exhibit 2 to the Declaration of Todd Richards; and

b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. WHAM-O may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant documents on a website, or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Todd Richards and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of Court is directed to issue a single original summons in the name of "atmjp and all other Defendants identified in Complaint" that shall apply to all Defendants. The combination of providing notice via electronic

7

publication and e-mail, along with any notice that Defendants receive from Online Marketplace Accounts and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

8. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to WHAM-O or on shorter notice as set by this Court.

9. The $10,000 bond posted by WHAM-O shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

Dated: August 18, 2020

_Thomas M Durkin_

_____

U.S. District Court Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | Case No. 20-cv-04162 |
| Plaintiffs, | **Judge Thomas M. Durkin** |
| v. | **Magistrate Judge Sheila M. Finnegan** |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

## PRELIMINARY INJUNCTION ORDER

THIS CAUSE being before the Court on Plaintiffs Luxottica Group S.p.A.'s ("Luxottica") and Oakley, Inc.'s ("Oakley") (collectively, "Plaintiffs") Motion for Entry of a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiffs' Motion for Entry of a Preliminary Injunction in its entirety against the defendants identified on Schedule A to the Complaint and attached hereto (collectively, the "Defendants").

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and have sold products using infringing and counterfeit versions of the Plaintiffs' federally registered trademarks ("Plaintiffs' Trademarks") to residents of Illinois. A list of the Plaintiffs' Trademarks is included in the below chart.

1

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |
| 2,718,485 | RAY-BAN | For: Goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>For: Clothing for men and women, namely, polo shirts; headgear, namely, berets and caps in class 25. |
| 595,513 | WAYFARER | For: Sun glasses in class 9. |
| 1,537,974 | CLUBMASTER | For: Sunglasses in class 9. |
| 650,499 |  | For: Sun glasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,093,658 |  | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |
| 1,726,955 |  | For: Bags; namely, tote, duffle and all purpose sports bags in class 18.<br><br>For: Cloths for cleaning opthalmic products in class 21.<br><br>For: Clothing and headgear; namely, hats in class 25. |
| 1,320,460 |  | For: Sunglasses and carrying cases therefor in class 9. |

| 3,522,603 |  | For: Sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses in class 9. |
|---|---|---|
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 1,522,692 | OAKLEY | For: Clothing, namely, shirts and hats in class 25. |
| 1,552,583 | OAKLEY | For: Goggles in class 9. |
| 2,293,046 | OAKLEY | For: Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks in class 25. |

| | | |
|---|---|---|
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |
| 3,771,517 | OAKLEY | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |

| | | |
|---|---|---|
| 1,980,039 | OAKLEY | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 1,356,297 | OAKLEY | For: Goggles, sunglasses, and protective pads for elbows, feet and knees in class 9. For: Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks in class 25. |
| 1,519,596 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,496,633 | (ellipse logo) | For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely, wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |

| | | |
|---|---|---|
| 3,331,124 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,151,994 |  | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 3,771,516 |  | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |

| | | |
|---|---|---|
| 2,300,245 |  | For: Clothing, namely, T-shirts, beachwear, blouses, sports shirts, jerseys, shorts, shirts, pants, racing pants, ski pants, vests, jackets, sweaters, pullovers, coats, sweatpants, sweatshirts, headwear, namely, hats, caps, and footwear, namely, shoes, athletic footwear, all purpose sports footwear in class 25. |
| 1,927,106 |  | For: Printed material, namely decals and stickers in class 16. |
| 1,984,501 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing and headwear, namely T-shirts, sweatshirts, jackets, hats, and caps in class 25. |
| 5,109,790 |  | For: Gloves in class 25. |
| 4,407,750 | CROSSLINK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |

7

| 3,733,882 | IRIDIUM | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| --- | --- | --- |
| 4,827,569 | JAWBREAKER | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 4,407,749 | RADARLOCK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,489,952 | OIL RIG | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,194,197 | FROGSKINS | For: Eyewear, namely sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |

| | | |
|---|---|---|
| 4,847,461 | FLAK | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 3,379,110 | RADAR | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,399 | LATCH | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 4,822,664 | SI TOMBSTONE | For: Protective and anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for protective and anti-glare eyewear in class 9. |
| 3,245,494 | GASCAN | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |

| 4,956,691 | TRIGGERMAN | For: Eyewear, namely, sunglasses in class 9. |
|---|---|---|
| 3,680,975 | FIVES SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,900,432 | VALVE | For: Protective eyewear, namely spectacles, prescription eyewear, namely, spectacles and sunglasses, anti-glare glasses and sunglasses and parts thereof, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses in class 9. |
| 3,941,018 | PATH | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,407 | JUPITER SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |

10

| | | |
|---|---|---|
| 4,136,113 | BATWOLF | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, ear stems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 1,701,476 | M FRAME | For: Protective eyewear; namely, goggles, anti-glare glasses; sunglasses and their parts; namely, lenses, replacement lenses, frames, earstems and nose pieces; cases specially adapted for sunglasses and their parts in class 9. |
| 2,054,810 | STRAIGHT JACKET | For: Protective and/or anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories including replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 3,379,109 | FLAK JACKET | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,756,605 | BADMAN | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |

11

| | | |
|---|---|---|
| 4,618,566 | TINCAN | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,106,614 | SQUARE WIRE | For: Protective and/or antiglare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces, and foam strips; cases specially adapted for protective and/or antiglare eyewear and their parts and accessories in class 9. |
| 1,952,697 | JACKET | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear in class 9. |
| 3,468,824 | HIJINX | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,087,464 | O FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |

| | | |
|---|---|---|
| 2,087,466 | E FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |
| 3,126,622 | CROWBAR | For: Sporting goods, namely goggles and replacement parts for goggles for skiing, snowboarding and motocross in class 9. |
| 1,778,325 | HYBRID | For: Protective eyewear; namely, spectacles, goggles, antiglare glasses and sunglasses, and their parts and accessories; namely, replacement lenses, frames, earstems and nose pieces; cases specially adapted to hold spectacles and sunglasses and their parts and accessories in class 9. |
| 2,250,767 | ROMEO | For: Protective and/or anti-glare eyewear, namely, sunglasses, and spectacles in class 9. |
| 5,636,292 | HOLBROOK | For: Eyewear, namely, sunglasses, goggles for sports, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,393,107 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses and sunglasses and parts thereof, namely frames and earstems in class 9. |

| 2,403,609 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses, and sunglasses and parts thereof, namely, frames and earstems in class 9. |
|---|---|---|
| 2,388,070 | JULIET | For: protective and/or anti-glare eyewear, namely, sunglasses, spectacles, and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 2,155,819 | X-METAL | For: protective and/or anti-glare eyewear, namely sunglasses, spectacles, goggles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; glasses specially adapted for protective and/or anti-glare eyewear, and their parts and accessories in class 9. |
| 4,813,708 | PRIZM | For: Protective and/or anti-glare eyewear, namely, sunglasses, spectacles and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear, their parts and their accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips in class 9. |

THIS COURT FURTHER FINDS that injunctive relief previously granted in the Temporary Restraining Order ("TRO") should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of Plaintiffs' previously granted Motion for Entry of a Temporary Restraining Order establishes that Plaintiffs

have demonstrated a likelihood of success on the merits; that no remedy at law exists; and that Plaintiffs will suffer irreparable harm if the injunction is not granted. Specifically, Plaintiffs have proved a *prima facie* case of trademark infringement because (1) Plaintiffs' Trademarks are distinctive marks and are registered with the U.S. Patent and Trademark Office on the Principal Register, (2) Defendants are not licensed or authorized to use any of Plaintiffs' Trademarks, and (3) Defendants' use of Plaintiffs' Trademarks is causing a likelihood of confusion as to the origin or sponsorship of Defendants' products with Plaintiffs. Furthermore, Defendants' continued and unauthorized use of Plaintiffs' Trademarks irreparably harms Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' reputation, loss of exclusivity, and loss of future sales. Monetary damages fail to address such damage and, therefore, Plaintiffs have an inadequate remedy at law. Moreover, the public interest is served by entry of this Preliminary Injunction to dispel the public confusion created by Defendants' actions. As such, this Court orders that:

1. Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be preliminarily enjoined and restrained from:

    a. using Plaintiffs' Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Plaintiffs' Product or not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiffs' Product or any other product produced by Plaintiffs, that is not Plaintiffs' or

not produced under the authorization, control or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.  further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

e.  manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including the Plaintiffs' Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof.

2.  The domain name registries for the Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within five (5) business days of receipt of this Order, shall, at Plaintiffs' choosing:

a.  unlock and change the registrar of record for the Domain Names to a registrar of Plaintiffs' selection until further ordered by this Court; or

b.  disable the Domain Names and make them inactive and untransferable until further ordered by this Court.

3.  The domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), within five (5) business days of receipt of this Order, shall take any steps necessary to transfer the Domain Names to a registrar account of

Plaintiffs' selection so that the Domain Names can be redirected or disabled until further ordered by this Court.

4. Upon Plaintiffs' request, any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of the Online Marketplaces and Domain Names, including, without limitation, any online marketplace platforms such as eBay, Inc. ("eBay"), AliExpress, Alibaba, Group Holding Ltd. ("Alibaba"), Amazon.com, Inc. ("Amazon"), ContextLogic Inc. d/b/a Wish.com ("Wish.com"), and Dhgate (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Plaintiffs expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

a. the identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information and all associated e-mail addresses;

b. the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplaces, the Domain Names, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplaces and Domain Names; and

c. any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial

17

institutions, including, without limitation, PayPal Inc. ("PayPal"), Alipay, Alibaba, Ant Financial Services Group ("Ant Financial"), Amazon Pay, Wish.com, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

5. Upon Plaintiffs' request, those with notice of the injunction, including the Third Party Providers as defined in Paragraph 4, shall within five (5) business days after receipt of such notice, disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Plaintiffs' Trademarks.

6. Defendants shall be temporarily and preliminarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. Any Third Party Providers, including PayPal, Alipay, Alibaba, Ant Financial, Wish.com, and Amazon Pay, shall, within five (5) business days of receipt of this Order:

    a. locate all accounts and funds connected to Defendants, the Seller Aliases, Online Marketplaces, and Domain Names, including, but not limited to, any financial accounts connected to the information listed in Schedule A hereto, the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of Jason Groppe, and any e-mail addresses provided for Defendants by third parties; and

    b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

8. Plaintiffs are authorized to issue expedited written discovery, pursuant to the Federal Rules of Civil Procedure 33, 34 and 36, related to:

a.  the identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information, including any and all associated e-mail addresses; and

b.  the nature of Defendants' operations and all associated sales, methods of payment for services and financial information, including, without limitation, identifying information associated with the Online Marketplaces, Domain Names and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplaces and Domain Names.

Plaintiffs are authorized to issue any such expedited discovery requests via e-mail. Defendants shall respond to any such discovery requests within three (3) business days of being served via e-mail.

9.  Plaintiffs may provide notice of these proceedings to Defendants, including service of process pursuant to Fed. R. Civ. P. 4(f)(3) and any future motions, by electronically publishing a link to the Complaint, this Order and other relevant documents on a website to which the Domain Names which are transferred to Plaintiffs' control will redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of Jason Groppe and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of the Court is directed to issue a single original summons in the name of "The Partnerships and all other Defendants identified in the Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably

calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

10. Schedule A to the Complaint [2], Exhibits 5 and 6 to the Declaration of Jason Groppe [13], [14] and the TRO [23] are unsealed.

11. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order as permitted by and in compliance with the Federal Rules of Civil Procedure and Northern District of Illinois Local Rules.

12. The $10,000 bond posted by Plaintiffs shall remain with the Court until a Final disposition of this case or until this Preliminary Injunction is terminated.

IT IS SO ORDERED.

Dated: August 17, 2020

_____

Thomas M. Durkin
United States District Judge

20

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CAMELBAK PRODUCTS, LLC,

     Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Civil Action No.: 1:20-cv-03947

Judge Thomas M. Durkin
Magistrate Judge Susan E. Cox

## PRELIMINARY INJUNCTION ORDER

THIS CAUSE being before the Court on Plaintiff, CamelBak Products, LLC's ("CAMELBAK" or "Plaintiff"), Motion for a Preliminary Injunction, and this Court having heard the evidence before it hereby GRANTS Plaintiff's Motion for Entry of a Preliminary Injunction in its entirety against the defendants identified in Schedule A (collectively, the "Defendants").

THIS COURT HEREBY FINDS that it has personal jurisdiction over the Defendants since the Defendants directly target their business activities toward consumers in the United States, including Illinois. "In the context of cases like this one, that means a plaintiff must show that each defendant is actually operating an interactive website that is accessible in Illinois and that each defendant has aimed such site at Illinois by standing ready, willing and able to ship its counterfeit goods to customers in Illinois in particular (or otherwise has some sufficient voluntary contacts with the state)." *Am. Bridal & Prom Indus. Ass'n v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 192 F.Supp.3d 924, 934 (N.D. Ill. 2016). In this case, Plaintiff has presented screenshot evidence that each Defendant Internet Store is reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can and do purchase products using counterfeit versions of Plaintiff's trademarks. *See*

1

Docket No. 11 which includes screenshot evidence confirming that each Defendant Internet Store does stand ready, willing and able to ship its counterfeit goods to customers in Illinois bearing infringing and/or counterfeit versions of the CAMELBAK trademarks, U.S. Trademark Registration Nos. 4,135,697 and 4,656,766 ("The CAMELBAK trademarks").

THIS COURT FURTHER FINDS that injunctive relief previously granted in the Temporary Restraining Order ("TRO") should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of CAMELBAK's previously granted Motion for a Temporary Restraining Order establishes that CAMELBAK has a likelihood of success on the merits; that no remedy at law exists; and that CAMELBAK will suffer irreparable harm if the injunction is not granted.

Specifically, CAMELBAK has proved a *prima facie* case of trademark infringement because (1) the CAMELBAK trademarks are distinctive marks and are registered with the U.S. Patent and Trademark Office on the Principal Register, (2) Defendants are not licensed or authorized to use the CAMELBAK trademarks, and (3) Defendants' use of the CAMELBAK trademarks are causing a likelihood of confusion as to the origin or sponsorship of Defendants' products with CAMELBAK. Furthermore, Defendants' continued and unauthorized use of the CAMELBAK trademarks irreparably harms CAMELBAK through diminished goodwill and brand confidence, damage to CAMELBAK's reputation, loss of exclusivity, and loss of future sales. Monetary damages fail to address such damage and, therefore, CAMELBAK has an inadequate remedy at law. Moreover, the public interest is served by entry of this Preliminary Injunction to dispel the public confusion created by Defendants' actions. Accordingly, this Court orders that:

2

1.    Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily enjoined and restrained from:

   a.  using the CAMELBAK trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine CAMELBAK product or not authorized by CAMELBAK to be sold in connection with the CAMELBAK trademarks;

   b.  passing off, inducing, or enabling others to sell or pass off any product as a genuine CAMELBAK product or any other product produced by CAMELBAK, that is not CAMELBAK's or not produced under the authorization, control or supervision of CAMELBAK and approved by CAMELBAK for sale under the CAMELBAK trademarks;

   c.  committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of CAMELBAK, or are sponsored by, approved by, or otherwise connected with CAMELBAK;

   d.  further infringing the CAMELBAK trademarks and damaging CAMELBAK's goodwill;

   e.  otherwise competing unfairly with CAMELBAK in any manner;

   f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for CAMELBAK, nor authorized by

3

CAMELBAK to be sold or offered for sale, and which bear any of the CAMELBAK trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell Counterfeit/Infringing CAMELBAK products.

2.  Those in privity with Defendants and with actual notice of this Order, including any online marketplaces such as, but not limited to, WISH, Amazon, and Alibaba Group Holding Ltd. along with any related Alibaba entities (collectively, "Marketplaces"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, shall within three (3) business days of receipt of this Order:

a.  disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit and infringing goods using the CAMELBAK trademarks, including any accounts associated with the Defendants listed in Schedule A;

b.  disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CAMELBAK trademarks; and

c.  take all steps necessary to prevent links to the Defendant Online Marketplace Accounts identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Online Marketplace Accounts from any search index.

3.    Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' Online Marketplace Accounts or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as Marketplaces, advertisers, Facebook, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including PayPal, Alibaba, Western Union, third party processors and other payment processing service providers, shippers, and online marketplace registrars (collectively, the "Third Party Providers") shall, within three (3) business days after receipt of such notice, provide to CAMELBAK expedited discovery, including copies of all documents and records in such person's or entity's possession or control relating to:

a.    The identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

b.    the nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace Accounts;

c.    Defendants' websites and/or any Online Marketplace Accounts;

d.    The Defendant Online Marketplace Accounts registered by Defendants; and

e.    Any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting

in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, Amazon, PayPal, WISH, Alipay, Alibaba, Western Union, or other merchant account providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

4. Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

5. eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), Context Logic, Inc.("WISH"), Amazon Payments, Inc. ("Amazon"), Alipay US, Inc. and its entities ("Alipay") and Heguang International Limited or Dunhuang Group d/b/a DHGATE, DHGate.com, DHPORT, DHLINK and DHPAY ("DHGate"), shall, within three (3) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites：Locate all accounts and funds connected to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any eBay, PayPal, WISH, Amazon, Alipay and DHGate accounts connected to the information listed in Schedule A hereto or the email addresses identified in Exhibit 2 to the Declaration of Daniel Kelly; and Restrain and enjoin any such accounts or funds that are non-U.S. foreign based from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

6. Any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within two (2) business days of receipt of this Order:

    a. Locate all accounts and funds connected to Defendants, or Defendants' Online Marketplace Accounts, including, but not limited to, any accounts connected to the information listed in Schedule A hereto or the email addresses identified in Exhibit 2 to the Declaration of Daniel Kelly; and

    b. Restrain and enjoin such accounts from receiving, transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

7. CAMELBAK may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed.R.Civ.P. 4(f)(3), by electronically publishing a link to the Complaint, this Order and other relevant documents on a website, or by sending an e-mail to the e-mail addresses identified in Exhibit 2 to the Declaration of Daniel Kelly and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of Court is directed to issue a single original summons in the name of "nenvi01_4 and all other Defendants identified in Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from Online Marketplace Accounts and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

8. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to CAMELBAK or on shorter notice as set by this Court.

9.     The $10,000 bond posted by CAMELBAK shall remain with the Court until a Final

disposition of this case or until this Preliminary Injunction is terminated.

Dated: <u>8/5/2020</u>

_Thomas M Durkin_

_____

U.S. District Court Judge