UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIAXING ZICHI TRADE CO., LTD., <br><br> Plaintiff, <br><br><br> Ling YANG, d/b/a Emperor Goose, <br> Xianchun JIANG, d/b/a FADSHOW, and <br> Shanshan MA, d/b/a Raddzo, et al. <br><br><br> Defendants. | Case No. 1:21-cv-973 <br><br> Judge: Martha M. Pacold <br><br> Magistrate Judge Young B. Kim |

**COMBINED MOTION TO DISSOLVE EX PARTE PRELIMINARY INJUNCTION AND**

**MOTION TO DISMISS COMPLAINT**

**INTRODUCTION**

Movant-Defendants, Ling YANG d/b/a Emperor Goose, (hererafter "YANG:") Xianchun JIANG d/b/a FADSHOW, (hereafter "JIANG") Shanshan MA d/b/a Raddzo, (hereafter "MA") collectively sometimes "Movant-Defendants" by and through their attorneys, move this Court dissolve the Preliminary Injunction because Plaintiff does not own and has no protectible trade dress in the functional coat shape alleged and used by or identified with third parties, not identifying Plaintiff as the exclusive source.

Movant-Defendants also move to dismiss the complaint based on Rule 12(b)(1) for lack of subject-matter jurisdiction in view of the fact that Plaintiff lacks standing to sue because the Plaintiff does not own the trade dress; Rule 12 (b) (6) for failure to state a claim; Rule 12(b)(7) for failure to join a necessary party, the trademark owner of Orolay, Jiawei QIU, under rule 19.

**PROCEDURAL HISTORY**

On Feb. 21, 2021, Plaintiff filed a three (3) count Complaint alleging trade dress and false designation of origin among other claims. The Complaint alleges both (1) trade dress and one (1)

1

trademark. Doc. 1 at ¶¶ 2, 26-29, Doc. 1-1. On March 19, 2021, Plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO") to freeze Defendants' Amazon accounts. Doc. 7. The *ex parte* TRO was granted on March 22, 2021. Doc. 9 & 10. An extension of TRO was granted on April 6, 2021. Doc. 11. Plaintiff's *ex parte* motion for a preliminary injunction of April 19, 2021, Doc. 12, was granted on May 6, 2021. Doc. 14 & 15. Summons issued on June 10, 2021. Doc. 17.

## I. MOTION TO DISSOLVE EX PARTE PRELIMINARY INJUNCTION BASED ON PLAINTIFF'S UNPROTECTABLE TRADE DRESS

The standard for a preliminary injunction or TRO is the same. See *Mays v. Dart*, F. Supp. 3d, 2020 WL 1812381, at *5 (N.D. Ill. Apr. 9, 2004) The decision whether to issue a preliminary injunction or TRO involves a two-step inquiry, with a threshold phase and a balancing phase. See *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. Of Educ.*, 858 F.3d. 1034, 1044 (7th Cir. 2017):

"First, the party seeking the preliminary injunction has the burden of making a threshold showing: (1) that he will suffer irreparable harm absent preliminary injunctive relief during pendency of his action; (2) inadequate remedies at law exist; and (3) he has a reasonable likelihood of success on the merits."

If movant meets the three threshold conditions, the court balances harm between the moving party and other parties or the public. Under *Valencia*, 993 F.3d at 966 (quoting *Roland Mach. Co. v. Dresser Indus. Inc.* 749 F.2d 380, 387 (7th Cir. 1984)) the court "employs a sliding scale approach" to balance. "The more likely the plaintiff is to win, the less heavily need to the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." It is the moving party's burden. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018).

Here, the preliminary injunction should be dissolved because 1) Plaintiff does not have a reasonable likelihood to success on the merits; 2) the harm identified by Plaintiff is not irreparable and can be adequately remedied; and 3) the balance of hardships favors Defendants.

## A. PLAINTIFF IS UNLIKLY TO SUCCEED ON THE MERITS BECAUSE THE FUNCTIONAL TRADE DRESS IS NOT PROTECTABLE OR ENFORCEABLE

In order to prevail on a claim for trade dress infringement under the Lanham Act, a Plaintiff must allege in its Complaint and prove: 1. Plaintiff owns the trade dress; 2. It is a valid and enforceable trade dress; 3. Defendant used the accused trade dress in interstate commerce; 4. Defendant used the accused trade dress in a manner that is likely to cause confusion; mistake; deception as to the source; origin; sponsorship; approval of Defendant's product and 5. Plaintiff's claimed trade dress is not functional. *See* 15 U.S.C. § 1125(a); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994).

### 1. PLAINTIFF FAILS TO CREDIBLY SHOW IT OWNS THE ALLEGED TRADE DRESS

For unregistered trade dress, Plaintiff must prove is that Plaintiff owns it. The Motion for a Temporary Restraining order makes a conclusory statement on ownership that is directly contradictory to the Complaint's Exhibit 1. The memorandum says: "Plaintiff is a China-based company that owns the Orolay® brand" (Doc. 7, page 7) while Exhibit 1 (Doc. 1-1, page 2) lists the registrant as "Qiu, JiaWei (CHINA INDIVIDUAL)" and nowhere identifies Plaintiff. The Qiu declaration never identifies Plaintiff as the owner of anything, merely identifying Plaintiff as a distributor. Separation between a trademark owner and a trademark user can be fatal to trademark rights. *Eva's Bridal, Inc. v. Halancik Enterprises, Inc.*, 639 F.3d 788 (7th Cir. 2011). Manufacturers, not distributors, are presumed to own trade identity rights. *Ilapak Research & Development S.A. v. Record SpA*. 762 F.Supp. 1318 (ND Ill 1991)

### 2. THE COMPLAINT AND DOCUMENTS REFERENCED THEREIN SHOW BOTH LACK OF OWNERSHIP AND ACQUIRED DISTINCTIVENESS INDICATING SOURCE

For product appearance trade dress to be enforceable (element 2) there must be acquired distinctiveness. Essentially, all products have a "look" but to be successful a Plaintiff must prove that the look tells consumers that the product comes from them. The appearance must convey that "this is a product from Plaintiff" not simply "you'll like a product that looks this way." *Wal-Mart Stores, Inc. v.*

*Samara Brothers, Inc.,* 120 S. Ct. 1339 (2000). *Wal-Mart* was another clothing "look" case and announced: "In the case of product design … we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs — such as a cocktail shaker shaped like a penguin — is intended not to identify the source, but to render the product itself more useful or more appealing." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, Fn 11 ("To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.")

If "source" is ambiguous – if the consumer can't recognize who made it from the look, because there are other similar products on the market – then the look does not indicate a particular source. *See AM General Corp. v. DaimlerChrysler Corp.* 311 F.3d 796, 815 (7th Cir. 2002) see also *Vital Pharmaceuticals v. American Body Bldg.*, 510 F.Supp.2d 1043 (S.D. Fla., 2007) ("Simply offering evidence of extensive advertising is inadequate to prove secondary meaning, as the dispositive factor is the effectiveness of that advertising.") The Complaint and Plaintiff's moving papers consistently refer to "The Orolay® Jacket" (although the title in the Complaint, Doc. 1, page 5 also identifies its origin with Amazon ("The Orolay® Jacket – a.k.a. "The Amazon Coat").

The Complaint, Doc. 1, pages 6 and 7 specifically identifies author, title, publisher and date, and attempts to provide URLs for two articles on which Plaintiff conclusorily relies: (1) "Schneider, Katy. "The Unlikely Tale of a $140 Amazon Coat That's Taken Over the Upper East Side" New York Magazine, March 27, 2018" (hereafter "New York Magazine article") (Defendant's Exhibit 42) and (2) Handley, Lucy. "Why the 'Amazon coat from this Chinese brand is a hit with US consumers" CNBC, February 21, 2019 (hereafter "CNBC article") (Complaint, Footnote 2) (Defendant's Exhibit 43). A third outside reference is an Oprah Winfrey recommendation, this one page reference can be viewed in its entirety. (Defendant's Exhibit 44) It is appropriate to consider these on both the Motion to Dissolve and the 12 (b) (6) motion because they are specifically referenced in the Complaint. *Rosenblum v.*

*Travelbyus.com Ltd.*, 299 F.3d 657 (2002)   The New York Magazine article cited by Plaintiff states:

"The coat is fairly plain: paneled, olive green, and made by a company called Orolay, a Chinese brand that also, curiously, makes folding chairs, storage cabinets, and wall-mounted tables."

This emphasizes absence of identifiable features ("fairly plain") and connects the product, not with Plaintiff, but the trademark owned by Mr. QIU. The opposite of look = source is shown.   The look is an aberration, notable as not "folding chairs, storage cabinets, and wall-mounted tables."

The article goes on to comment:

"The coat's appeal lies in its fashionable-yet-accessible, lightly directional look (the voluminous paneling and zippers have "a little Balenciaga influence," says Pimentel) and its startling price — the super-stylish women who own it take pleasure in telling curious onlookers that no, their jacket is not Sacai, and, actually, it costs under $100, including shipping if you're an Amazon Prime member."

It is not identification of "look" with Mr. QIU's furniture company as source that is important, it is aesthetics ("fashionable") and it is cheap. The only comments relating to the origin of the coat are "Balenciaga influence" and it is "not Sacai.".   Perhaps Balenciaga or Sacai should bring a trade dress case against Mr. QIU. From the title, origin is with Amazon, not Plaintiff.

Product design is unprotectable as trade dress when it is so common in the industry or marketplace that it cannot be said to identify any particular source. *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063 (2nd Cir. 1995) ("[B]asic product shapes are usually common in a given industry, and a court may deny protection to a product design based on both its commonness and its basicness." *Id*. See *Indonesian Imports, Inc. v. Smith,* 1999 U.S. Dist. LEXIS 4237 1999 WL 183629 at 7 (N.D. Cal. 1999*)* ("Indonesian's claimed trade dress is "a composite of common and basic handbag features").

Plaintiff also alleges the ambiguous "appearance of the hoods (with fur or not)" as a trade dress feature.   When compared to the article cited by Plaintiff the fur hood version has different pocket closures.   Side pockets appears to have button closures in the New York Magazine article:

5

Complaint Paragraph 2

"Schneider, Katy. "The Unlikely Tale of a $140 Amazon Coat That's Taken Over the Upper East Side" New York Magazine, March 27, 2018.




If pocket arrangements are a trade dress feature, and if the cited New York Magazine article illuminates the allegations of the Complaint, it is unknown which pockets are the trade dress.

In the CNBC article Mr. QIU's trademark is mentioned but similarly the origin of the coat is with a retailer, not the manufacturer – "The fact that (an) unknown brand has become a branded 'Amazon coat' is a coup." Without recognition or identification there is nothing to "own."

Handley, Lucy, "Why the 'Amazon coat from this Chinese brand is a hit with US consumers" CNBC, February 21, 2019 says the OROLAY trademark is "owned" by Plaintiff. Complaint, Exhibit 1 shows it is owned by Mr. QIU. The article also does not identify the trade dress in any way or indicate that it is an indicator of origin. While Mr. QIU's trademark is mentioned, identification is with a retailer, not the manufacturer – "The fact that (an) unknown brand has become a branded 'Amazon coat' is a coup." As with the New York Magazine article, the driving force is not identification of trade dress with source, but that the product is cheap. Some purchasers will make the purchase because a friend or influencer has posted on the social media. Source is irrelevant, so trade dress is absent. Trade dress relies on consumers identifying source. Viral sales are the opposite. "Viral is not a marketing strategy and certainly not a business strategy."

The Oprah reference casts doubt on there being trade dress:



This does not say "you can tell who makes it based on the look" – to the contrary, it says nothing but function (and it's cheap): "It's flattering and warm, comes in sizes up to 5X, has adjustable side zips, and costs way less than it appears. Now in brand-new colors"

The New York Magazine article conveys a single color as a "feature" but the Oprah announces multiple colors.  See *Keystone Camera Prods. Corp. v. Ansco Photo–Optical Prods. Corp.*, 667 F.Supp. 1221 (N.D.Ill.1987) where inconsistent colors prevented trade dress.  As with New York Magazine and CNBC sales are motivated by price and functional features, not "source":

"A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected." *Fun-Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993,1000 (2nd Cir. 1997). The cited articles connect to Balenciaga, Sacai and Amazon.   The features they describe are found in those coats. The alleged trade dress here has no distinguishing features, no special colors, material, or markings. It does not even have an unusual shape or size, even though neither shape nor size can be protected trade dress.

The Complaint and the preliminary injunction with the benefit of evidence and argument now presented *inter partes*, now show (1) Plaintiff does not owns Orolay trade dress while a different legal

entity owns the Orolay trademark (2) Plaintiff, a mere distributor would not own trade identity as compared to its manufacturer (3) the allegations of the Complaint and evidence cited therein shows identification of source could be with third parties not exclusively Plaintiff.  Plaintiff does not own the trademark and Plaintiff has not shown it somehow owns a separable trade dress.

The facts and law cited immediately above are based on the Complaint and articles cited therein. They support both the Motion to Dissolve and the Motion to Dismiss.

### 3.    THIRD PARTY USES SHOW THERE IS NO PROTECTABLE TRADE DRESS

The many third party sales of similar items, none of which connect the items with either Plaintiff or the trademark owner, Mr. QIU show that there is common use by all sorts of sellers in coats having features listed by Plaintiff as theirs.   These can be briefly summarized as:

Exhibits showing substantially the same coat sold by specifically identified sources or brands are Exhibit 3 , Macys, Tommy Hilfiger the source; Exhibit 4   Nordstrom Rack, manufacturer not named; Exhibit 5   Nordstrom Rack, Sam Edelman;   Exhibit 6 Donna Karan, source of DKNY;   Exhibit 8 Steve Madden Womens Puffer Classic; Exhibit 9     Amazon.com, Steve Madden Womens Puffer Medium; Exhibit 10   Amazon, .com Womens Thickened Winter lightweight, brand ZIHJIA;   Exhibit 13, Amazon Abollria Womens Thickened Winter Jacket; Exhibit 14, Amazon ANNA-CHRIS-Womens Thicken XX Large; Exhibit 15 Amazon, Shanghai-Bund-Womens Thickened Burgundy; Exhibit 17 Amazon, source Beyove.   Some of the identified sources are not particularly famous, but several are.   Whoever they are, Plaintiff is not identified. Since Plaintiff's burden is to prove the alleged trade dress identifies "a single source" *Fasa Corp. v. Playmates Toys, Inc*., 869 F.Supp. 1334 (N.D. Ill., 1994) ("a mental association in buyers' minds between the alleged mark and a single source of the product." *Echo Travel, Inc. v. Travel Assocs.*, Inc., 870 F.2d 1264, 1266 (7th Cir.1989))   the presence of a half dozen, or more, not Plaintiff means there cannot be acquired distinctiveness.

Exhibits showing substantially the same coat sold with no connection whatsoever to any particular source or brands are Exhibit 7 www.overstock.com "Sold and Shipped by Opensky";   Exhibit 19

Modasharp.com – no source identified; Exhibit 22 Zapatillasreebok.xyz, no source identified; Exhibit 25 eBay, no source identified, but "Zipped Pockets" described; Exhibit 29, Exhibit 30 and Exhibit 31 are from Aliexpress, no source identified. There being no source identified, it would not appear that the appearance of the coat is anything other than generic. No source is not a single source and certainly not Plaintiff.

Two Exhibits verbally express the look as generic, using "Orolay Style" to identify the style, not the source: Exhibit 24 EBay, "Women-Warm-Parka-Orolay-Style", Exhibit 27 EBay, "Orolay Style" both showing the style is generic.

Putting aside all these third parties, four Exhibits that correctly identify one of the Defendants, by name or trademark, accurately, as the source, Exhibits 11 and 12 are Amazon, Defendant's Emperor Goose Womens Jacket (their own identifier Emperor Goose eliminates likelihood of confusion with Orolay ) and Exhibit 16 and Exhibit 18, Amazon.com, Defendant FADSHOW (their own identifier FADSHOW eliminates likelihood of confusion with Orolay). Using a house mark negates likely confusion. *Victory Pipe Craftsmen Inc. v. Faberge, Inc*. 582 F.Supp 651 (ND Ill, 1985)

Finally, of all these Exhibits some are Plaintiff, not identifying trademark owner Mr. QIU, and it would not appear that any provide the message "you can identify Orolay, even without seeing the trademark, by the look of the jacket. Exhibits 32, 33, 34, 35 and 36, Wish.com shows both the trade dress and identifies Orolay as the source, there being an Orolay page on Wish.com. Of course a word mark is presumed distinctive, while trade dress would not be unless there were effective advertising connecting the look with the source. Compare, e.g. *In re Owens-Corning Fiberglass Corp*., 774 F.2d 1116, 1121 (Fed.Cir.1985) where ads Super Bowl ads repeatedly connected the color pink with Owens Corning.

**4. PLAINTIFF DOES NOT MEET ITS BURDEN TO SHOW THE "TRADE DRESS" IS <u>NON-FUNCTIONAL IN ORDER TO SUPPORT THE PRELIMINARY INJUNCTION</u>**

*Flexible Steel Lacing Company v. Conveyor Accessories, In*c. 955 F.3d 632 (7th Cir, 2020) points out:

> A product feature is considered functional and is ineligible for trademark protection "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." This is known as the "Inwood formulation." In cases of "esthetic [sic] functionality," such as the question involved in *Qualitex*, courts also may inquire as to whether the exclusive use of the feature would place competitors at a " 'significant non-reputation-related disadvantage.' " If the product feature or design is functional under the Inwood formulation, then the court need not proceed further to consider whether there is a non-reputation-related disadvantage. [citations omitted]

There being no product configuration trademark registration, Plaintiff has the burden of proving that the matter sought to be protected is not functional and if Plaintiff fails, the case is over. "[W]here the design is functional . . . there is no need to proceed further to consider if there is a competitive necessity for the feature." *TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23 (2001*)* "Once a product feature is found functional based on other considerations, there is no need to consider the availability of alternative designs because the feature cannot be given trade dress protection merely because there are alternative designs available." *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed. Cir. 2002). Secondary meaning could not save it. *TrafFix supra*, at 33.

> *Flexible Steel Lacing, supra*, continued:
> Courts generally consider the following factors to determine whether a design is functional: (1) the existence of a utility patent, expired or unexpired, that involves or describes the functionality of an item's design element; (2) the utilitarian properties of the item's unpatented design elements; (3) advertising of the item that touts the utilitarian advantages of the item's design elements; (4) the dearth of, or difficulty in creating, alternative designs for the item's purpose; (5) the effect of the design feature on an item's quality or cost. None of these factors is dispositive. An asserted trade dress that affects the cost or quality of a product remains "functional even if other solutions to the design problems are available to competitors." [citations omitted]

Notably, Mr. QIU tried to obtain a European design patent, but it was thrown out as invalid. European Community application Serial No. 006375747-0001 filed April 11, 2019, claimed a jacket looking like the trade dress. January 14, 2021 the design patent was invalidated as not novel and/or obvious. Frank Gao Decl. Exhibit 1. Plaintiff did not appeal and had to pay fees and costs.

Features like coat length, fit and pockets are shown in US utility patents. Length of a coat (and shape and fit) are functional. *See* e.g. Chou, US Patent 4712252. Exhibit 39. Arranging pockets on a coat and their closures are functional.   See. e.g. Imler, US Patent 6119269, Exhibit 40.   Wood, US Patent 10842203, Exhibit 41, shows both functional pocket arrangement and functional coat length. Note that

these are submitted to illuminate the issue of functionality of the features – not to show whether or not particular features are novel. Zippers, of course, are functional, and given both the zipper and button pockets in the New York Magazine article, we do not even know if zippers, as compared to buttons, are a trade dress component.

Functional properties are as shown and described by the Complaint-cited articles: "fashionable-yet-accessible, lightly directional look (the voluminous paneling and zippers …" (New York Magazine article) "flattering and warm" (Oprah recommendation). The CNBC article merely mentions "fashion" – the opposite of identification with a particular source – and "warm".

## B. THE BALANCE OF HARDSHIPS FAVORS DEFENDANTS.

The nature of the balancing analysis depends on the moving party's likelihood of success: the higher the likelihood, the more the balance tips in favor of granting injunctive relief. *Mays v. Dart*, 2020 US. Dist. LEXID 73230 at *115 (N.D. Ill. Apr. 27, 2020).

As discussed above, Plaintiff does not have a likelihood to success on the merits. Therefore, the balance tips in favor of Defendants. Furthermore, because of the Preliminary Injunction, Defendants' right to compete and the public's interest in product availability have been compromised. On the other hand, given all the third party uses, whether Defendants sell, or not, is unlikely to change Plaintiff's sales – consumers who want a warm, fashionable, cheap coat have many vendors from whom to buy. Defendants have legally recognized, competitive interest in selling functional winter coats and in not having its demand disrupted. That interest is already being impaired and impeded, is under threat of further impairment and impediment, by the Injunction. (Doc. 14 and 15). The balance of harms weighs in favor of dissolving the Preliminary Injunction.

## C. ADEQUATE REMEDY AT LAW IS PRESENT

As pointed out above, unfettered third parties sell similar coats. While it is doubtful Plaintiff, or Mr. QIU would "win" they will not lose any market presence because of the numerous competitors. In

the unlikely event Plaintiff prevails, actual sales information might be able to quantify if Plaintiff lost any money to Movant-Defendants.

## II. MOTION TO DISMISS UNDER 12(b)(1) FOR LACK OF STANDING

Movant-Defendants, move to dismiss the Complaint for lack of subject matter jurisdiction in view of the fact that Plaintiff lacks standing to sue Section 43(a) of the Lanham Act (15 U.S.C 1125(a)) because Plaintiff does not own the trademark and trade dress. *See* Complaint exhibit 1, Doc. 1-1. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994).

While an element in a trade dress case is that the Plaintiff must own the trade dress, the Complaint makes a conclusory allegation, paragraph 22, to this effect, while paragraphs 14 – 22 consistently refer to the jacket as the Orolay® jacket and paragraph 16 refers to US Trademark Registration No. 5474044 which Plaintiff does not own. From the "ownership" element of trade dress infringement necessarily follows the premise that only an owner has standing to bring suit.

## III. MOTION TO DISMISS UNDER 12 (b) (6) FOR FAILURE TO STATE A CLAIM

The evidence discussed above includes (1) allegations in the Complaint, (2) content in published articles cited in the Complaint as well as (3) publications regarding third party use and functionality. Categories (1) and (2) are appropriate for consideration on a Rule 12 (b) (6) Motion to Dismiss. The well plead allegations and cited exhibits establish Plaintiff does not own the trade dress; there is no valid or enforceable trade dress; and Plaintiff cannot prove its trade dress is not functional. The other elements are not conceded, but would require going outside the Complaint.

## IV. RULE 12(b)(7) MOTION TO DISMISS FOR FAILURE TO JOIN JIAWEI QIU

Rule 19 requires a person be joined or the case dismissed if the person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest."

*Ochs v. Hindman*, 984 F. Supp. 2d 903, 907-8 (N.D. Ill. 2013) sets forth two-step inquiry with a set of sub-steps: A person is a necessary party if the court cannot accord complete relief among existing parties without them or the person has an interest in the subject of the action and is so situated that deciding without them will as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double exposure

      Plaintiff put in the Complaint and added as an exhibit Registered Trademark 5475044 which Mr. QIU personally owns. Plaintiff connects the trademark and trade dress referring to "the Orolay jacket". The only connection between Plaintiff and the trademark, and if there were trade dress, the trade dress owner is not Plaintiff, which is a distributor of Orolay products. Distributors typically do not own the trade identity. If Mr. QIU is the real party in interest, he should be a party. If not, Defendants may be chasing a ghost and if Defendants prove there is no trade dress, Mr. QIU may try a second bite at the apple. Mr. QIU is a necessary party and indispensable party because in that Mr. QIU's absence, the court cannot accord complete relief among existing parties. This Court should order that the person, Mr. QIU be made a party under Fed. R. Civ. P. 19(a)(2) or dismiss this case under 12(b)(7).

**CONCLUSION**

      For the foregoing reasons, Defendants respectfully request that this Court to grant the Motion to dismiss, finding that Defendants did not infringe Plaintiff's functional trade dress; and to dissolve the preliminary injunction. Defendants also pray for relief, including damage due to the PRELIMINARY INJUNCTION, and attorney's fees to the extent permitted under the applicable law and other relief as the Court deems appropriate

      Respectfully submitted,

      */s/ Frank Y. Gao*

      One of Defendant's attorneys

      **Attorney for Defendants,**
      Ling YANG d/b/a Emperor Goose,

                                                          Xianchun JIANG d/b/a FADSHOW,
                                                          Shanshan MA d/b/a Raddzo

Frank Gao
David C. Brezina
Ladas & Parry LLP
224 S. Michigan Ave. Suite 1600
Chicago, Illinois 60604
(312) 427-1300

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2021, I electronically filed the foregoing Motion and Notice of Motion using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

/s/ *Frank Y. Gao*

One of Defendant's attorneys

**Attorney for Defendant,**
Ling YANG d/b/a Emperor Goose,
 Xianchun JIANG d/b/a FADSHOW,
Shanshan MA d/b/a Raddzo

Frank Gao
David C. Brezina
Ladas & Parry LLP
224 S. Michigan Ave. Suite 1600
Chicago, Illinois 60604
(312) 427-1300