EXHIBIT 2

**INVALIDITY No ICD 109 261**

**Sulan Ou**, 2 Haihua Rd, Jiyang Dist. Sanya, Hainan, People's Republic of China (applicant), represented by **ARCADE & ASOCIADOS**, C/ Isabel Colbrand, 6 - 5ª planta, 28050 Madrid, Spain (professional representative)

a g a i n s t

**JIAWEI QIU**, No. 12, ShiHuang Temple, Lianfeng Village, Fengqiao Town, Nanhu District, Jiaxing City, Zhejiang Province, 314000, People's Republic of China (holder), represented by **Manuel DE ARPE TEJERO**, Calle Islas de Cabo Verde 86 1º, 28035 Madrid, Spain (professional representative).

On 08/10/2020, the Invalidity Division takes the following

**DECISION**

**1.**   The application for a declaration of invalidity is upheld.

**2.**   Registered Community design No 006375747-0001 is declared invalid.

**3.**   The holder bears the applicant's costs, fixed at EUR 750.

**REASONS**

The applicant filed an application for a declaration of invalidity (the application) against Community design No 006375747-0001 (the RCD). The RCD was filed and registered in the holder's name on 11/04/2019.

The following products are indicated in the registration:

02-02    *Jackets.*

The registration contains the following images:



1.1



| 1.2 | 1.3 | 1.4 |

| 1.5 | 1.6 | 1.7 |

Please note that the images in this document are not necessarily to scale.

The applicant invoked Article 25(1)(b) CDR in conjunction with Articles 5 and 6 CDR.

**SUMMARY OF THE PARTIES' ARGUMENTS**

The applicant argued that the contested RCD was neither novel nor had any individual character as regards several earlier designs. Consequently, it should be rejected under Article 25(1)(b) CDR.
One of these earlier designs, invoked as an obstacle to the contested RCD's novelty and individual character, was the design of a jacket published on www.amazon.fr with the following view:



(D1). The evidence of disclosure of this design was presented in Annex 5.

The holder did not submit any observations in reply.
**ARTICLE 25(1)(b) CDR IN CONJUNCTION WITH ARTICLES 5 AND 6 CDR**

a)    Disclosure pursuant to Article 7 CDR

For the purpose of applying Articles 5 and 6 CDR, the tests of novelty and individual character, a design will be deemed to have been made available to the public if it has been published following registration or otherwise, or exhibited, used in trade or otherwise disclosed, before the RCD filing date or the RCD priority date, if a priority is claimed, except where these events could not reasonably have become known in the normal course of business to the circles specialised in the sector concerned, operating within the EU.

The onus is on the invalidity applicant to prove the disclosure of the earlier designs. There are no provisions in the CDR or the CDIR as to the kind or specific form of evidence the invalidity applicant is required to submit to prove that the prior design on which the application for a declaration of invalidity is based has been made available to the public before the relevant date.

Article 28(1)(b)(v) CDIR only states that where the ground for invalidity is that the RCD does not fulfil the requirements set out in Article 5 or 6 CDR, the indication and the reproduction of the prior designs that could form an obstacle to the novelty or individual character of the registered Community design, as well as documents proving the existence of those earlier designs, must be contained in the application.

It follows that, on the one hand, the invalidity applicant is free to choose the evidence it considers useful to submit in support of its application for invalidity and that, on the other hand, the Office is required to examine the evidence in its entirety in order to establish whether there is sufficient proof of a prior disclosure within the meaning of Article 7(1) CDR (09/03/2012, T-450/08, Phials, EU:T:2012:117, § 21-23).

In this regard, the disclosure of an earlier design cannot be proved by means of probabilities or suppositions, but must be based on solid and objective evidence that proves that the earlier design was made available to the public within the meaning of Article 7 CDR (09/03/2012, T-450/08, Phials, EU:T:2012:117, § 24).

With reference to the evidential value of the individual documents, this means that regard should be had first and foremost to the credibility of the content. It is necessary to take account, in particular, of the person from whom the document originates, the circumstances in which it came into being, the person to whom it was addressed and whether, on its face, the document appears sound and reliable (09/03/2012, T-450/08, Phials, EU:T:2012:117, § 23-24, 26).

The case law further specifies that the items of evidence submitted by the applicant for a declaration of invalidity must be weighed against each other. The reason for this is that, although some of the items of evidence may be insufficient in themselves to demonstrate the disclosure of a prior design, the fact remains that, if they are combined or read in conjunction with other documents or information, they may contribute towards establishing proof of the disclosure (09/03/2012, T-450/08, Phials, EU:T:2012:117, § 25).

In support of its observations, the applicant submitted as evidence an extract from the website www.amazon.fr, on which the Amazon platform operates, showing the product in which the earlier design is incorporated. The product is identified by the Amazon Standard Identification Number (ASIN) B07MTJ5FP3, where it was first available on 14/01//2019.

Evidence of disclosure originating from e-commerce platforms may have evidential value even in the absence of an image of the design, provided that a unique code identifying the relevant product can be linked to the particular design (27/02/2018, T-166/15, Cases for mobile phones, EU:C:2018:100, § 59-63).

The holder did not make any comments in relation to this.

Considering the above, the Invalidity Division has no doubt that the event of disclosure of the earlier design invoked took place.

For sake of procedural economy, the Invalidity Division will start with the comparison of D1 with the contested design and only if necessary, it will continue with comparison of the contested design with the others.

**b) Individual character pursuant to Article 6 CDR**

Under Article 6(1)(b) CDR, a registered Community design must be considered to have individual character if the overall impression it produces on the informed user differs from the overall impression produced on such a user by any design that has been made available to the public before the date of filing of the application for registration of the design for which protection is claimed or, if priority is claimed, the date of priority. Article 6(2) CDR states that, in assessing that individual character, the degree of freedom of the designer in developing the design must be taken into consideration.

Recital 14 CDR provides that, when assessing whether a design has individual character with respect to the existing design corpus, it is necessary to take into consideration the nature of the product to which the design is applied or in which it is incorporated, and in particular the industrial sector to which it belongs.

It follows from the above that the assessment of the individual character of a Community design with respect to any earlier design disclosed to the public must, in essence, proceed from a four-step review:

- the sector of products in which the compared designs are incorporated or to which they are applied,

- the informed user of the products according to their purpose and, in reference to the informed user:

    o the degree of knowledge of the state of the art, and
    o the degree of attention in the comparison, direct if possible, of the designs,

- the degree of freedom of the designer in the development of the designs, and

- the result of the comparison of the designs, taking into account the overall impressions produced on the user by the contested design and any of the earlier designs. The assessment should not be simply an analytical comparison of a list of similarities and differences (18/03/2010, T-9/07, Metal rappers, EU:T:2010:96, § 54-84; 20/10/2011, C-281/10 P, Metal rappers, EU:C:2011:679, § 53-59; 07/11/2013, T-666/11, Gatto domestico, EU:T:2013:584, § 21).

The comparison should focus on the contested design as registered and must be based on the elements that are actually protected, without regard to the features excluded from the protection (14/06/2011, T-68/10, Watches, EU:T:2011:269, § 74; 07/11/2013, T-666/11, Gatto domestico, EU:T:2013:584, § 30).

The designer's degree of freedom in developing a design is established, inter alia, by the constraints of the features imposed by the technical function of the product or an element thereof, or by statutory requirements applicable to the product. Those constraints result in a standardisation of certain features, which will thus be common to the designs applied to the product concerned (09/09/2011, T-10/08, Internal combustion engine, EU:T:2011:446; 09/09/2011, T-11/08, Internal combustion engine, EU:T:2011:447 § 32, 47; 18/03/2010, T-9/07, Metal rappers, Article, § 67).

The General Court has refused to allow a general design trend to be regarded as a factor that restricts the designer's freedom, since it is precisely that freedom on the part of the designer that allows him to discover new shapes and new trends or even to innovate in the context of an existing trend (13/11/2012, T-83/11 & T-84/11, Radiatori per riscaldamento, EU:T:2014:592, § 95).

When assessing the individual character of a design taking into account the existing design corpus, the degree of freedom of the designer in developing the design may be such as to make informed users more sensitive to differences between the designs under comparison (13/11/2012, T-83/11 & T-84/11, Radiatori per riscaldamento, EU:T:2014:592, § 81), as may the manner in which the product at issue is used, in particular the way it is usually handled (22/06/2010, T-153/08, Communications equipment, EU:T:2010:248, § 66; 07/11/2013, T-666/11, Gatto domestico, EU:T:2013:584, § 30).

The informed user is a legal fiction that must be understood, depending on each case, as an intermediate concept between the average consumer, applicable in trade mark matters, of whom no specific knowledge is required and who, in general, does not perform a direct comparison between the marks, and the man of the art, applicable in the field of patents, an expert endowed with extensive technical skills and exhibiting a very high degree of attention when directly comparing conflicting inventions (18/03/2010, T-9/07, Metal rappers, EU:T:2010:96, § 53; 25/04/2013, T-80/10, Montres, EU:T:2013:214, § 100).

The concept of the informed user may be understood as referring, not to a user displaying an average level of attention, but to a particularly observant one, either because of his or her personal experience or his or her extensive knowledge of the sector in question (20/10/2011, C-281/10 P, Metal rappers, EU:C:2011:679, § 53).

Furthermore, the qualifier 'informed' suggests that, without being a designer or a technical expert, the user knows the various designs which exist in the sector concerned, possesses a certain degree of knowledge with regard to the features which those designs usually include, and, as a result of his or her interest in the products concerned, shows a relatively high level of attention when using them (13/05/2015, T-15/13, Shower drains, EU:T:2015:281, § 128, and the case law cited therein), whether the user is, as in the case in question, a professional, or the final consumer of the products (12/03/2020, T-352/19, Packaging for foodstuffs, EU:T:2020:94, § 38).

Pursuant to Article 63(1) CDR, in invalidity proceedings, the Invalidity Division is restricted to examining the facts, evidence and arguments submitted by the parties and the relief sought. The Invalidity Division therefore does not carry out its own research. This, however, does not preclude it from also taking into consideration facts that are well known, that is, that are likely to be known by anyone or can be learned from generally accessible sources.
The facts and arguments in a particular case, in principle, must have been known before the RCD was filed; however, facts relating to the design corpus, the density of the market or the designer's freedom should precede the date of disclosure of the prior design.

*The sector concerned and the informed user*

Pursuant to the applicant, both the contested CDR and the prior design are incorporated in clothing, namely, an anorak or down jacket for women. Therefore, the informed user in this case is a person who knows these products, and the characteristics attributable to said goods, especially that these products have an obvious quality of providing shelter for the wearer.

The Invalidity Division agrees with these statements and adds that the informed user of this product will know that they come in different colours, decorations, have pockets and usually are closed by a hood and a ruffle.

*The designer's freedom*

The degree of freedom of a jacket designer is only limited to the extent that it should provide heat or warmth to the wearer, as claimed the applicant. The RCD holder did not comment on this issue.

In the Invalidity Division's view, although the presence of the closure mechanisms, such as ruffles, as well as the filling or material to provide warmth, as functional features limiting the designer's freedom, is necessary in the product, this does not mean that there is a limited degree of freedom for the designer, given that there are possibilities for altering the design of these elements, their positioning and also the shape, material, decoration and general appearance of the actual product.

The parties did not further argue that designers of jackets had to adhere to certain technical or statutory limitations and no such limitations are apparent to the Invalidity Division.

Consequently, the overall designer's freedom within the meaning of Article 6(2) CDR is not, in this connection, limited. In accordance with the case law cited, only minor differences between the prior and the contested designs will be insufficient to produce different overall impressions on the informed user.



*The overall impression*

The designs under comparison are shown below:



| Prior design | Contested design |

The designs under comparison are similar in the vast majority of their features.

The shape of both jackets is very similar. They are loose jackets narrowing slightly towards the bottom, where another layer of material is visible. They both have a large hood.

Particular features of both designs are similar, if not identical, the layering, as well as the sewing design, dividing the jacket into sections and layers. These are important features, because the designer had a broad degree of freedom to design and could have departed from the prior art.

Further, the designs compared correspond in the design and positioning of square shaped pockets, placed exactly in the same place and containing zippers with long hanging decorative elements connected to the three same zippers. Further, from the representation of the

contested RCD it becomes apparent that it has fur lining inside its hood, as well as narrow cuffs, as in the earlier design.

It is true that when comparing the designs at issue side by side, there are some noticeable differences between them.

Firstly, the back side of the earlier design is longer at the bottom, if compared to the symmetrical looking contested RCD. Moreover, the contested RCD has an additional layer of material opening next to the front zipper. This feature is not clearly visible in the earlier design. In addition, there are sewing lines shown on the back side of the contested design, that are not visible in the earlier design. Finally, the edge of the bottom layer of the earlier design is slightly wider than in the contested RCD.

Having said the above the Invalidity Division considers that the differences between the designs are considerably less striking than their common features, in particular the shape and construction of the jacket in layers, the presence, arrangement and design of pockets, zippers and its decorative elements.

This conclusion is reinforced by the quite considerable design freedom and the fact that the shape of the design and its decorations was arbitrary. Even accounting for technical or safety constraints, the contested RCD could have had many different shapes and decorative elements. This was not the case here.

In light of the foregoing, it is concluded that the challenged design does not produce a different overall impression from that of the prior design. It closely reproduces features of the prior design, inter alia those that are arbitrary and not subject to any technical necessity obliging a designer to adopt a particular shape and size.

As a result, the challenged design lacks individual character in the sense of Article 6(1)(b) CDR and must be invalidated.

As this prior design leads to the success of the application and the invalidity of the contested RCD, there is no need to examine the other prior designs invoked by the applicant.

**CONCLUSION**

The facts and evidence submitted by the applicant support the grounds for invalidity under Article 25(1)(b) CDR in conjunction with Article 6 CDR; therefore, the application is upheld and the RCD is declared invalid.

Since the application is fully successful on this ground, there is no need to examine the other grounds of Article 25(1)(b) CDR invoked in the application further, namely those in conjunction with Article 5 CDR.

**COSTS**

According to Article 70(1) CDR, the losing party in invalidity proceedings must bear the fees and costs incurred by the other party.

Since the holder is the losing party, it must bear the invalidity fee as well as the costs incurred by the applicant in the course of these proceedings.

According to Article 70(1) CDR and Article 79(7)(f) CDIR, the costs to be paid to the applicant are the costs of representation, which are to be fixed on the basis of the maximum rate set therein, and the costs of the invalidity fee.



**The Invalidity Division**

| Michele M. BENEDETTI - ALOISI | Gailė SAKALAITĖ | Birgit FILTENBORG |

According to Article 56 CDR, any party adversely affected by this decision has a right to appeal against this decision. According to Article 57 CDR, notice of appeal must be filed in writing at the Office within two months of the date of notification of this decision. Furthermore, a written statement of the grounds of appeal must be filed within four months of the same date. The notice of appeal will be deemed to have been filed only when the appeal fee of EUR 800 has been paid.

The amount determined in the fixing of costs may only be reviewed on request. According to Article 79(4) CDIR, such a request must be filed within one month from the date of notification of this fixing of costs and will be deemed to have been filed only when the review fee of EUR 100 has been paid (Annex to CDFR, paragraph 24).