**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JIAXING ZICHI TRADE CO., LTD, <br><br><br> Plaintiff, <br><br> v. <br><br><br> LING YANG, d/b/a Emperor Goose, XIAN CHUN JIANG, d/b/a FADSHOW, and SHANSHAN MA, d/b/a Raddzo, and DOES 1-50, inclusive, <br><br><br> Defendants. | Case No.: 1:21-cv-00973 <br><br> Hon. Martha M. Pacold <br><br> Magistrate Judge Hon. Young B. Kim |

**PLAINTIFF JIAXING ZICHI TRADE CO., LTD'S OPPOSITION TO DEFENDANTS' MOTION TO DISSOLVE PRELIMINARY INJUNCTION ORDER AND MOTION TO DISMISS COMPLAINT**

Plaintiff Jiaxing Zichi Trade Co., Ltd, ("Plaintiff"), by and through its undersigned counsel, hereby responds to the Motion to Dissolve Preliminary Injunction Order and Motion to Dismiss Complaint (collectively, "Motions") filed by Defendants Ling Yang, d/b/a Emperor Goose, Xianchun Jiang, d/b/a FADSHOW, and Shanshan Ma, d/b/a Raddzo (collectively, "Defendants"). (Dkt. 17).

For the reasons set forth herein, Plaintiff respectfully requests that this Court deny Defendants' Motions.

## <u>TABLE OF CONTENTS</u>

I.    <u>INTRODUCTION</u> ................................................................................1

II.   <u>ARGUMENT</u>.........................................................................3

      A.  DEFENDANTS' MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION

      ORDER SHOULD BE DENIED...........................................................3

      1.  <u>Plaintiff is Likely to Succeed on the Merits.</u>.....................................3

          1.  Plaintiff Owns Valid Trade Dress Rights................................3

            1.  *Plaintiff owns the trade dress in question*.......................3

            2.  *Plaintiff's trade dress is not generic*.............................4

            3.  *Plaintiff's trade dress definition is clear and well-defined*..........6

            4.  *Plaintiff has shown secondary meaning*.........................8

          2.  Plaintiff's Trade Dress is Non-Functional……......................10

          3.  Consumers are Likely to be Confused…..............................12

      2.  <u>Plaintiff Has Been Irreparably Harmed, Not Defendant</u>…………….....13

      3.  <u>Balance of Harm and Public Interest Favor Plaintiff</u>................................14

      B.  DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED.....................15

      1.  <u>Plaintiff has standing to bring this lawsuit against Defendants</u>.................15

      2.  <u>Plaintiff has met the pleading standards under *Twombly/Iqbal*</u> ...............15

      3.  <u>Jiawei Qiu is not a required party to this case</u>...........................17

III.  <u>CONCLUSION</u> .................................................................19

## <u>**TABLE OF AUTHORITIES**</u>

### **Federal Cases**

*Artus Corp. v. Nordic Co.*, 512 F. Supp. 1184 (W.D. Pa. 1981) .................................................. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 16

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ...................................................................................16

*Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486 (7th Cir. 2019) ...................10, 11, 16

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) .........................12

*Brunswick Corp v. Jones*., 784 F.2d  271 (7th Cir. 1986) .............................................................3

*Comput. Care v. Serv. Sys. Enters*., *Inc*., 982 F.2d 1063 (7th Cir. 1992) ......................................10

*Curtis v. Thompson*, 840 F.2d at 1291 (7th Cir. 1988) ...................................................................3

*Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, (7th Cir. 2001) ..............................................17

*Echo Travel, Inc. v. Travel Assocs., Inc,* 870 F.2d 1264 (7th Cir. 1989) ........................................8

*Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990) ............................................................16

*Hyatt Corp. v. Hyatt Legal Services.,* 736 F.2d 1153 (7th Cir. 1984). ............................................3

*Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387 (N.D. Ill. Mar. 29, 2018) ..............................4

*Johnny Blastoff v. Los Angeles Rams Football Co.,* 188 F.3d 427 (7th Cir. 1999) ..........................4

*Kellytoy Worldwide, Inc. v. TY, Inc.*, No. 20 C 748 (N.D. Ill. Aug. 25, 2020) ...............................8

*Keystone Camera Prods. Corp. v. Ansco Photo–Optical Prods. Corp.*, 667 F.Supp. 1221 (N.D.Ill.1987) ....................................................................................................................................7

*Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir. 1984) ........................................... 12

*McGraw-Edison Co. v. Walt Disney Productions,* 787 F.2d 1163 (7th Cir. 1986).........................10

*Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017 (7th Cir. 2013) .......................................... 15

*Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852 (7th Cir. 1982) ..............13

*Qualitex Co. v. Jacobson Prods*. Co., 514 U.S. 159 (1995) ................................................8

*Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380 (7th Cir. 1984) ...................................3

*Rotec Indus., Inc. v. Aecon Grp., Inc.,* 436 F. Supp. 2d 931 (N.D. Ill. 2006) .................................17

*Roulo v. Russ Berrie Co., Inc.,* 886 F.2d 931 (7th Cir. 1989) .........................................5

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,* 786 F.3d 510 (7th Cir. 2015) ...........................................................................................................17

*Sales, Inc. v. Hampshire Paper Corp*., 192 F.3d 633 (7th Cir. 1999) ..........................................12

*Secretary of Labor v. Fitzsimmons,* 805 F.2d 682 (7th Cir. 1986) ...............................................18

*Thomas & Betts Corp. v. Panduit Corp*., 138 F.3d 277 (7th Cir. 1998) .......................................8

*Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763 (1992) ............................................4

*Ty, Inc. v. Jones Group Inc.,* 237 F.3d 891 (7th Cir. 2001) .........................................14

*Victory Pipe Craftsmen Inc. v. Faberge, Inc*., 582 F.Supp 651 (ND Ill, 1985)............................12

*VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 660 (D.P.R. 1992)..........13

*Weber-Stephen Products LLC v. Sears Holding Corp.*, No. 13 C 01686 (N.D. Ill. Sep. 1, 2015) ...........................................................................................................10

*Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082 (7th Cir. 2016)..............................................15

**Federal Statutes**

15 U.S.C. § 1051 ........................................................................................................1

**Federal Rules**

Fed. R. Civ. P.12 ...................................................................................................*passim*

Fed. R. Civ. P.19 ....................................................................................................17

**Other Authorities**

*McCarthy on Trademarks and Unfair Competition* (4th ed., 2015) .......................................10,12

iv

I.    **INTRODUCTION**

Plaintiff brought this case against Defendants under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Illinois law in an effort to curtail Defendants' illegal and blatant misappropriation of Plaintiff's valuable trade dress rights in the overall look and feel of the OROLAY® jacket. Upon good cause this Court entered a Temporary Restraining Order ("TRO") in favor of Plaintiff which was later converted into a Preliminary Injunction Order ("PI"). (Dkts. 9, 15). The three named-Defendants in this action are now represented by the same counsel, and have moved to dissolve the PI and to dismiss the case pursuant to Federal Rule Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7). (Dkt. 17). Defendants' Motions are without merit and should be denied in their entirety.

First, Plaintiff has previously proffered evidence, facts and legal support which were, and are still, more than sufficient to justify the continued imposition of an injunction against Defendants. Specifically, Plaintiff has more than reasonably established the necessary predicate requirements for a preliminary injunction to issue that Defendants have failed to address in their moving papers. Instead, Defendants ignore these facts and embark on a deliberate attempt to distract this Court's attention away from the relevant substantive issues. Defendants base their arguments primarily upon three online articles and/or websites that Plaintiff referred to in the Complaint[1], yet somehow fail to grasp the fact that these references were included by Plaintiff to establish the notoriety, success, and popularity of the OROLAY® jacket.

As discussed in further detail herein, not only do Defendants base most of their arguments regarding trade dress validity on the references above; Defendants also mischaracterize what these

---

[1] (1) Schneider, Katy. "The Unlikely Tale of a $140 Amazon Coat That's Taken Over the Upper East Side", New York Magazine, March 27, 2018" ("New York Magazine article");
  (2) Handley, Lucy. "Why the 'Amazon coat from this Chinese brand is a hit with US consumers" CNBC, February 21, 2019 ( "CNBC article"); and
  (3) "Oprah's Favorite Things 2019 List" ("Oprah's recommendation").

articles have to say about the OROLAY® jacket in many ways.  Furthermore, Defendants refer to and include examples of what it alleges are "Third Party Uses" but fails to recognize that the evidence actually bolsters Plaintiff's substantive arguments as most of the evidence introduced by Defendants consist of various other instances of third-party infringement of Plaintiff's trade dress rights.  Notwithstanding the logical fallacies in Defendants' arguments (the fact that other parties have infringed Plaintiff's trade dress does not mean that Defendants have not infringed), Defendants have simply failed to provide any evidence that would justify dissolving the preliminary injunction order.  There is no evidence that Defendants have been harmed, nor could there be, given Defendants blatant infringement.

Defendants' motion to dismiss is equally problematic.  Specifically, Plaintiff has sufficiently demonstrated that it owns and is entitled to asserting claims for protection of the trade dress in question, and otherwise has the requisite standing to pursue the instant action.  Second, Defendants' arguments that joinder of a third-party to this action is necessary are unavailing.  Lastly, Defendants fail to articulate and follow the proper standard for pleadings under *Twombly/Iqbal*, and instead, apparently believe that if the Court were to grant the motion to dissolve, then the Court should also grant Defendants' motion to dismiss.  Defendants cannot come to terms with the fact that Plaintiff has sufficiently asserted well-plead facts which plausibly support Plaintiff's claims for relief here.  Accordingly, Defendant's 12(b)(6) motion should also be denied.

/ / /

/ / /

/ / /

/ / /

2

## II.   ARGUMENT

### A. THE MOTION TO DISSOLVE SHOULD BE DENIED

1. Plaintiff is likely to succeed on the merits.

At the preliminary injunction stage, a plaintiff needs only demonstrate that he or she has a "better than negligible" chance of succeeding on the merits to justify injunctive relief. *Curtis v. Thompson*, 840 F.2d at 1291, 1296 (7th Cir. 1988); *Brunswick Corp v. Jones*., 784 F.2d 271, 275 (7th Cir. 1986) ("Although the plaintiff must demonstrate some probability of success on the merits, 'the threshold is low. It is enough that the plaintiff's chances are better than negligible . . .'") (quoting *Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 387) (7th Cir. 1984); *see also Hyatt Corp. v. Hyatt Legal Services.*, 736 F.2d 1153, 1156. (7th Cir. 1984) (in trademark infringement cases, a court will analyze not whether the plaintiff will or will not prevail on the merits, but whether the plaintiff has demonstrated a better than negligible chance of establishing the "trademark" and "likelihood of confusion" prongs under section 43(a). )

1. Plaintiff's Owns Valid Trade Dress Rights.

***Plaintiff owns the trade dress in question.*** Plaintiff brought this case to enforce its trade dress rights in the OROLAY® jacket, and the relevant question for determination here would be who owns the trade dress – not, who owns the trademark[2]. In this case, Plaintiff is the first to sell the OROLAY®[3] jacket in the U.S. back in 2013 and has since used the design of the OROLAY® jacket as a source identifier to its consumers. (Dkt. 7, Declaration of Jiawei Qiu ("Qiu Decl.") ¶ 4,

---

[2] Defendants' reliance on the fact that the registered trademark owner of the OROLAY® brand is Jiawei Qiu (CEO of Plaintiff) is misplaced because this does not bear on who owns the trade dress in question.

[3] Being the exclusive authorized U.S. distributor of products bearing the Orolay® trademark, Plaintiff has the right to use the OROLAY® trademark. (Qiu Decl. ¶ 6)

6-7).  Accordingly, Plaintiff owns the trade dress in question.  *See, e.g.*, *Johnny Blastoff v. Los Angeles Rams Football Co.,* 188 F.3d 427, 434 (7th Cir. 1999) (The  party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it.)[4]

*Plaintiff's trade dress is not generic.*  Defendants also challenge Plaintiff's trade dress on the grounds of genericness.  However, Defendants fail to articulate a proper legal standard that governs the assessment of genericness in this Circuit[5].  Settled precedent holds that generic marks are "those that refe[r] to the genus of which the particular product is a species." *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992) (alteration in original) (internal quotation marks and citation omitted).  In this District, only if the "primary significance" of a mark is to denote a type of good rather than a source does it become generic. *Illinois Tamale Co. v. El-Greg, Inc.*, No. 16 C 5387, 2018 U.S. Dist. LEXIS 53433, at *7 (N.D. Ill. Mar. 29, 2018).  Plaintiff's trade dress is clearly not generic under the requisite standard, and Defendants fail to show otherwise – Defendants offer no facts to establish that the combination of the design elements of the OROLAY® jacket have become so ubiquitous among or intrinsic to <u>winter jackets</u> in the marketplace that the "primary significance" refers to winter jackets in general rather than identifying a source. [6]  Specifically, in support of their arguments that Plaintiff's trade dress is

_____

[4] Defendants argue that "Qiu's Declaration" names Plaintiff as a distributor of the OROLAY® jacket – rather than a manufacturer, and therefore Plaintiff does not own the trade dress in question. While Plaintiff is unclear about what Defendants are arguing for here, that factual assertion is clearly wrong because Paragraph four of Qiu's Declaration explicitly states that "Plaintiff is the original designer, manufacturer, and distributor of … the Orolay jacket*".*  (Qiu Decl. ¶ 4)

[5] Defendants do not cite any decisions in this Circuit to support their argument that Plaintiff's trade dress is generic.

[6] Even assuming arguendo that the OROLAY® jacket does contain some common, even generic/descriptive features to winter jackets in general, such as hoods, pockets, and zippers, this does not render an otherwise distinctive trade dress non-protectable, because the specific design

generic, Defendants rely on the New York Magazine article and evidence of purported "Third Party Uses". Plaintiff addresses each of these in turn:

New York Magazine Article.   In the New York Magazine article entitled "The Unlikely Tale of *a $140 Amazon Coat* That's Taken Over the Upper East Side", the author quoted the view from a fashion director at Neiman Marcus who said that the OROLAY® jacket may have "a little *Balenciaga* influence" and that the product is not as expensive as one that is made by *Sacai*. Defendants take this to mean that the OROLAY® jacket contains features that are also found in products made by Balenciaga, Sacai and Amazon. That reading is clearly wrong. Whether the OROLAY® jacket contain elements that may have some similarities as to those jackets designed by Balenciaga, Sacai and other fashion labels, Defendants fail to grasp the fact that Plaintiff's trade dress involves the unique, overall look and style of the OROLAY® jacket. Defendants further fail to establish that the overall look and appearance of the OROLAY® jacket has come to now define the very genre of winter jackets. Instead, the fact is that the OROLAY® jacket consists of a unique design, and when taken together as a whole, is entitled to trade dress protection.

"Third Party Uses".   Defendants refer to a few instances where others have also infringed Plaintiff's trade dress (so that their products and OROLAY® jacket have common design elements) and argue that "the coat is anything other than generic". Again, this does not establish that the claimed design elements of the OROLAY® jacket, when viewed as a whole, have been so extensively used and/or common in the industry that the "primary significance" of Plaintiff's trade dress refers to winter jackets in general rather than identifying a source. In other words, the trade

---

of these features and the combination of the design elements are sufficiently unique to warrant trade-dress protection. *Roulo v. Russ Berrie Co., Inc.,* 886 F.2d 931 936 (7th Cir. 1989) (plaintiff's trade dress is protectable despite the fact that it has "incorporated several common features such as stripes, dots, handwriting and other common design elements" because the combination of these elements was sufficiently unique to warrant trade-dress protection.)

dress at issue specifically relates to the OROLAY® jacket, and not the broader, more general description of just a "winter jacket".

*Plaintiff's trade dress definition is clear and well-defined.* Defendants also take issue with the color and the design of hoods and pocket arrangements, amongst other features of Plaintiff's trade dress. Defendants claim that these features are not described with sufficient clarity. However, except for citing an inapposite case decided by this Court (which Plaintiff will address in detail below), Defendants fail to cite any case law whatsoever as legal support for their assertion. What is even more problematic is that Defendants appear to have based these arguments almost entirely on a description of the OROLAY® jacket by third-parties, not Plaintiff (specifically, how the New York Magazine article and Oprah Recommendation "describe" the OROLAY® jacket). It is worth pointing out that Plaintiff has never incorporated any outside references (including but not limited to the New York Magazine article and Oprah Recommendation) into the Complaint to define or describe its trade dress. Plaintiff has described its trade dress with sufficient clarity and the trade dress features are well-defined.

Inconsistent Colors. To the extent that Defendants argue that Plaintiff's trade dress claims are barred for claiming inconsistent colors, such an argument fails both as a matter of fact and as a matter of law. Importantly, Plaintiff does not claim that color is a trade dress feature. Nor does Plaintiff claim *inconsistent* colors. Defendants' argument for inconsistent colors is based on the New York Magazine Article where the author indicates that the OROLAY® jacket is available in the color olive green and yet "Oprah's Favorite Things 2019 List" indicates that the coat might be available in other colors as well. Neither of these references by third-parties unrelated to Plaintiff regarding colors has anything to do with any purported claims about color by Plaintiff. Nor do

they support Defendants' argument that Plaintiff claims inconsistent colors. Again, Plaintiff does not claim any colors as a feature of its trade dress.

Defendants also cite an inapposite case, *Keystone Camera Prods. Corp. v. Ansco Photo–Optical Prods. Corp.*, 667 F.Supp. 1221 (N.D.Ill.1987), where this Court previously denied protection for trade dress that included indefinite color schemes. This is simply not the case here because Plaintiff does not claim color as a trade dress feature, and Plaintiff does not base its claims on Defendants' misappropriation of color.

<u>Appearance of Hoods and Pocket Arrangements.</u> Defendants suggest that Plaintiff's description of the appearance of hoods and pocket arrangements is unclear. As no case law is cited, it is difficult for Plaintiff to fully analyze and address Defendants' argument. For example, Defendants simply state that Plaintiff's description of the hoods of the OROLAY® jacket ambiguous, without any further explanation or discussion.

Defendants also claim that Plaintiff's description of the pocket arrangement is unclear because the New York Magazine suggests a different design of the pockets. Again, what New York Magazine has to say about the OROLAY® jacket should not be viewed as Plaintiff's description of its trade dress. Furthermore, the pocket design is different from the one in Plaintiff's claimed trade dress as described in the Complaint because it is for a different product. [7]

Indeed, Plaintiff has clearly and consistently articulated its trade dress (which Defendants seem to have been able to counterfeit and copy nearly identically) and Defendants are reasonably aware of the particularity and the contours of Plaintiff's claimed trade dress. Reducing visual and

---

[7] The New York Magazine article contains an advertisement beneath which clearly displays a different product made by Plaintiff (not the trade dress at issue here) and which the Defendants rely on to argue that "it is unknown which pockets are the trade dress".

textural features to writing always presents a challenge, and here Plaintiff attempts to define the trade dress both by verbally describing the elements and by depicting it graphically by reference to the designs set forth in Introduction and Illustration 1 to the Complaint. Plaintiff believes such description has been sufficiently pled, and Defendants cannot just close their eyes to the obvious in claiming that they do not receive fair notice regarding which aspects of the OROLAY® jacket are protected. *See, e.g., Kellytoy Worldwide, Inc. v. TY, Inc.*, No. 20 C 748, 2020 U.S. Dist. LEXIS 153972, at *8 (N.D. Ill. Aug. 25, 2020) (finding Plaintiff's description has put Defendant on notice of the trade dress in light of the images of the trade dress and the verbal description.)

**Plaintiff has shown secondary meaning.** Trade dress acquires secondary meaning when, "in the minds of the public, the primary significance of a product feature ... is to identify the source of the product." *Thomas & Betts Corp. v. Panduit Corp*., 138 F.3d 277, 291 (7th Cir. 1998) (alteration in original) (quoting *Qualitex Co. v. Jacobson Prods*. Co., 514 U.S. 159, 163 (1995)). Here, Defendants have not presented any evidence to suggest that consuming public do not identify the trade dress with the source of the product[8]. Nor do they seek to refute the overwhelming facts presented in Plaintiff's motion for TRO that the "primary significance" of the overall look and feel of the OROLAY® jacket is to identify the source. Instead, Defendants again rely on a few minor media references in Plaintiff's Complaint to challenge the trade dress under secondary meaning. [9] Such reliance is again misplaced.

---

[8] Importantly, the consuming public does not need to become aware of the company that made and/or sold the OROLAY® jacket for the OROLAY® jacket to have secondary meaning. *Echo Travel, Inc. v. Travel Assocs., Inc.,* 870 F.2d 1264, 1266-67 (7th Cir. 1989) (The source of the products can be anonymous -- it is not necessary that the public be aware of the identity of the producer.)

[9] Defendants also misrepresent what these articles said. For example, Defendants claim that the articles either do not identify the source of trade dress or suggest the source of the product is with some other company.

8

    1.  <u>Third-Party References to the OROLAY® jacket as an "Amazon Coat"[10]</u>

First, Defendants argue that the fact that some refer to the OROLAY® jacket as an "Amazon Coat" suggests that the source of the products is with Amazon. That argument is doomed to fail. As the coat is sold on Amazon.com and being a best-seller on Amazon, for obvious reasons some online articles might refer to the OROLAY® jacket as "**an** Amazon coat" or "**a** $140 Amazon Coat". This alone is insufficient to refute the fact in Plaintiff's motion for TRO that consumers primarily identify the trade dress with OROLAY®.[11]

    2.  <u>Third-Party Use of Plaintiff's Trade Dress</u>

Defendants then make the most insensible argument that the existence of multiple other infringers in the marketplace precludes the secondary meaning of Plaintiff's trade dress. Specifically, Defendants provide several exhibits where the same trade dress has been misappropriated not only by them but also others. Defendants offer no evidence about how extensively these third parties have been selling and/or offered for sale such similar products, and how their use, if any, affected the source-identifying capacity of Plaintiff's trade dress. As the

---

1. CNBC Article: "A $129.99 winter coat **by Chinese fashion label Orolay** has become a number one best-seller on Amazon".

2. Oprah Recommendation: " **Orolay** Women's Thickened Down Jackets"

3. New York Magazing article: ""The coat is fairly plain: paneled, olive green, and **made by company called Orolay,** a Chinese brand…"

[10] Defendants also attempt to base their argument on the use of the "Amazon coat" as a shorthand to refer to the OROLAY® jacket in the Complaint by Plaintiff's legal representative. That reliance is clearly questionable, and Plaintiff itself has never identified its coat as coming from Amazon in connection with selling and/or offering for sale the OROLAY® jacket.

[11] Importantly, one of the facts that Plaintiff put forth in its motion papers and Defendants fail to address is the fact that Plaintiff has extensively promoted the OROLAY® jacket and prominently identified the coat with the source OROLAY®. Furthermore, Plaintiff's Amazon store and official website has clearly and conspicuously identified the products as "**Orolay** Women's Thickened Down Jacket". Accordingly, Defendants fail to show that the *consuming public* do not primarily identify the source of the products as coming from OROLAY®.

Seventh Circuit has made clear, third-party use of similar marks affect the distinctiveness of a mark "only to the extent that the similar marks are promoted by their owners or recognized by the consuming public." *McGraw-Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1171 (7th Cir. 1986). The third-party use that Defendants cite here, unfortunately, are counterfeiting use and Defendants fail to show any of these infringing products have acquired secondary meaning before the Plaintiff (if at all) and/or the extent and volume of sales of these products. This, without more, does not materially affect the distinctiveness of Plaintiff's trade dress.

On the other hand, evidence of intentional copying is a well-established basis to prove secondary meaning. "Evidence that [the] defendant knowingly imitated or copied plaintiff's symbol has long been regarded as ... probative of the existence of secondary meaning." *McCarthy on Trademarks and Unfair Competition* § 15:38 (4th ed., 2015). *Weber-Stephen Products LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 U.S. Dist. LEXIS 116727, at *14 (N.D. Ill. Sep. 1, 2015). Here, the intent of Defendants in copying Plaintiff's design is to confuse consumers and pass off their product as the Plaintiff's is undisputable – as Defendants have counterfeited and copied the OROLAY® jacket in almost every detail.

### 2. Plaintiff's Trade Dress is Non-Functional.

Here, Plaintiff claims trade dress protection in the overall look and appearance of the OROLAY® jacket. As such, Defendants' Motions ignore the law that the functionality analysis should be based on the trade dress as a whole rather than its individual elements. See *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, citing *Comput. Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (where plaintiff seeks to protect overall appearance of its trade dress, focus of analysis is on that total appearance rather than individual design elements in isolation.) Defendants' citations to the utility patents filed on some of the individual features of

10

the OROLAY® jacket, such as the length of coat and pocket arrangements, does not render the OROLAY® jacket, when viewed as a whole, functional.  Furthermore, the utility patents cited by Defendants do not even address the specific design feature in the OROLAY® jacket. *Bodum,* 927 F.3d at 493 ("Whether it is more advantageous for a French press to have a handle, however, is not the pertinent inquiry; the question is whether there is an advantage to having this designed handle.")  For example, the utility patent on the length of the coat is dissimilar to that of the OROLAY® jacket.  (Dkt. 17, Exhibit 39.)

The relevance of the denials of design patents to the functionality analysis remains unexplained.  However, for sake of complete clarity and to the extent that such is relevant here, Plaintiff recently received a notice of allowance from the USPTO, which allows for the issuance of a Design Patent for the OROLAY® jacket.  (Declaration of Edward Chen ("Chen Decl.") ¶ 2; Exhibit A).

Defendant also elides the distinction between a product's "function" in the everyday meaning of the term and "functional" as a term of art used in trade dress law.  The fact that the OROLAY® jacket is warm and fashionable does not render it "functional" under trade dress law. To show its product is "non-functional" in the trade dress sense, Plaintiff does not need to prove that its products does not serve any function.  Rather, Plaintiff only needs to prove that preventing competitors from copying the exact same design would not significantly disadvantage them from producing a competitive and cost-efficient product. *Bodum,* 927 F.3d at 492.  Plaintiff has clearly made this showing in its motion for TRO -- there are numerous alternative ways to design quality winter jackets.  Others are just not supposed to copy the exact combination of Plaintiff's design elements in the OROLAY® jacket.

/ / /

3.   Consumers are Likely to be Confused.

Defendants argue that consumers are not likely to be confused because their products were sold in connection with their brand name EMPEROR GOOSE and FADSHOW.  Defendants cite *Victory Pipe Craftsmen Inc. v. Faberge, Inc*. 582 F.Supp 651 (ND Ill, 1985), claiming that "using a house mark negates likely confusion."  Defendants misstate the law, however, because *Victory Pipe* states that "the use of a **strong** house mark [] precludes confusion between similar marks". Here, Defendants offer no facts to show that their marks are strong; nor is Defendants' mark a house mark.  The *Victory Pipe* case is thus inapposite.

Indeed, this is a clear palming-off case, and Defendants' use of ambiguous and random marks or brand labeling does not rid of the fact that the products are still counterfeit products that infringe upon Plaintiff's trade dress rights.  "[T]he majority of cases hold that labeling an otherwise infringing look-alike product does not prevent infringement." *McCarthy on Trademarks and Unfair Competition* § 8:16.  Indeed, "the majority view is that labeling or use of a word mark does not avoid what would otherwise be an infringing trade dress." Id. § 23:53. Labeling may not prevent confusion "when the differences in labeling and packaging are not great." *Sales, Inc. v. Hampshire Paper Corp*., 192 F.3d 633, 637 (7th Cir. 1999); *see also Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1446 (Fed. Cir. 1984) (finding that the prominence of the label should be considered in assessing the legal effect of labeling); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1047 (2d Cir. 1992) ("the trade name may be a less dominant feature of the entire trade dress and thus have less force in countering other similarities between two trade dresses"); *Artus Corp. v. Nordic Co.*, 512 F. Supp. 1184, 1190-91 (W.D. Pa. 1981) ("A dissimilarity in names will often prove ineffective in preventing confusion caused by the general similarity in appearance of the product").

Here, Defendants do not prominently display their own brand names on the counterfeit jackets, nor are such brand names used in connection with Defendants' attempted sale of the counterfeited products. Except for their product listings, the seller's information page, and the infringing products themselves that vaguely refer to EMPEROR GOOSE and FADSHOW that are not even seem to be owned by them as per the record of federal trademark registration, the brand names chosen by Defendants here do not appear to be used anywhere else.

Defendants' counterfeited versions of the OROLAY® jacket and blatant copying of Plaintiff's trade dress without use of Defendants' own marks or brand name (so that the similarities in the trade dresses predominates over the differences in the labels), means that the limited presence or use by Defendants of such marks does not serve to adequately inform the public about the source of the product. Furthermore, the fact that Defendants' counterfeit products contain different labels actually goes further towards a possibility of increasing the likelihood of confusion by consumers, because consumers might infer a relationship between the parties; for example, they might infer that plaintiff has licensed, approved or otherwise authorized the defendant's use of its trade dress. *See VMG Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648, 660 (D.P.R. 1992). Plaintiff has not licensed, approved, or otherwise authorized Defendants' use of its trade dress. (Dkt. 7, Qiu Decl. ¶ 24).

2. Plaintiff Has Been Irreparably Harmed, Not Defendant.

Defendants argue that "actual sales information might be able to quantify if Plaintiff lost any money to Movant-Defendant". Defendants fail to address the loss of invaluable goodwill due to Defendants' infringing activities and sale of counterfeited products which has long recognized by courts as a type of irreparable harm that lacks of adequate legal remedy and justifies the entry of a preliminary injunction order. *Processed Plastic Co. v. Warner Communications, Inc.*, 675

13

F.2d 852, 858 (7th Cir. 1982), *see also Ty, Inc. v. Jones Group Inc.,* 237 F.3d 891, 894 (7th Cir. 2001) (the type of injuries occasioned by trademark infringement are presumed to be irreparable because it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations.)  Furthermore, Plaintiff has already been irreparably harmed by Defendants' blatant copying, counterfeiting, and trade dress infringement, as previously discussed in Plaintiff's prior submissions and briefings to the Court.  On the other hand, Defendants fail to identify a single instance of plausible harm that it would be subjected to, or has been subjected to as the result of the preliminary injunction order. This is because Defendants simply cannot do so, as there has been no harm to Defendants.

3.  Balance of Harm and Public Interest Favor Plaintiff.

Plaintiff has established that its trade dress is valid and enforceable, and that Defendants have infringed the protectable trade dress claimed by Plaintiff.  Defendants have failed to establish what, if any, reasons there are for allowing counterfeited, fake copies of Plaintiff's products, that the public interest could benefit from.  Defendants' assertion that Plaintiff will not be harmed given the fact that there are numerous counterfeiters and infringers of Plaintiff's trade dress rights is logically flawed and must be ignored.  Defendants have failed to establish any argument to support their acts of counterfeiting or justify their infringement of Plaintiff's trade dress rights.  Defendants are not entitled to a "right to compete" in the marketplace by selling counterfeiting goods. Accordingly, they do not have any cognizable legal interests that have been impaired by the TRO/PI.

For the foregoing reasons, Defendants' motion to dissolve the preliminary injunction order should be denied.

/ / /

14

## B. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

### 1. Plaintiff has standing to bring this lawsuit against Defendants.

Defendants move to dismiss the case for lack of standing pursuant to Rule 12(b)(1) on the grounds that Plaintiff does not own the trademark OROLAY®. As discussed above, Plaintiff is seeking relief based on its trade dress. Plaintiff does not need to own the trademark to enforce its trade dress. Plaintiff has established trade dress ownership because it was the first to sell the OROLAY® jacket in the U.S., and it has since used the OROLAY® jacket as a designation of source. (*See supra*, Dec. Qiu ¶ 4, 7).

### 2. Plaintiff has met the pleading standards under *Twombly/Iqbal.*

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. See *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court also typically considers "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). Accordingly, this Court might consider the information in the opposition and TRO/PI in ruling on the Rule 12(b)(6) motion.

Defendants move to dismiss this case under Rule 12(b)(6) with a simple categorical statement that Plaintiff's Complaint fails to establish that it owns a valid, enforceable, and non-

functional trade dress. Here, Defendants do not elaborate on how Plaintiff's pleading is deficient in any manner but simply asks this Court to leap to the conclusion in its favor. [12]

Importantly, a motion to dismiss is not judged by the same standard as the motion to dissolve; nor is it evaluated under the same standard as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6)*; Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits). To survive a rule 12(b)(6) motion, Plaintiff need only assert sufficient facts in the Complaint to provide the defendant with fair notice and to show that the requested relief is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US 662, 678 (2009). In order to properly plead trade dress infringement, Plaintiff need only allege facts which plausibly demonstrate that it owns valid trade dress rights, and its claimed trade dress has acquired secondary meaning. *Bodum* 927 F.3d at 491 (7th Cir. 2019).

Plaintiff has indeed sufficiently alleged those facts. As set forth above, Plaintiff has established that its description of the trade dress has properly put Defendants on notice of the contours of its claimed trade dress and Plaintiff has demonstrated that it has a better than negligible chance – which is a higher standard than the plausibility standard -- to establish that Plaintiff owns protectable trade dress in the OROLAY® jacket, that the trade dress is not functional, and that Defendants' products are likely to cause consumer confusion as to its source. *Bodum*, 927 F.3d at 491. In any event, Plaintiff respectfully requests this Court allow it to amend the Complaint to the

---

[12] As Defendants do not clarify why Plaintiff's pleading is deficient, it is difficult for Plaintiff to provide a meaningful response.

extent this Court considers any part of the pleading deficient. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.,*786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend …")

### 3. Jiawei Qiu is not a required party to this case.

As a threshold matter, Defendants mischaracterize Rule 19 as requiring either a necessary party be joined, or the case dismissed.   Rule 19 asks whether a party is (1) necessary, and should be joined, and then if the party cannot be feasibly joined, whether the party is (2) indispensable, such that the case cannot in "equity and good conscience" proceed without that party and must be dismissed. *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001).  In other words, if the required party cannot be joined, a court will still consider whether, under Rule 19(b), "equity and good conscience" requires that the litigation should proceed without the absent party. *Davis,* 268 F.3d at 480 (7th Cir. 2001).

A party is required if joinder is feasible and (1) the court cannot accord complete relief to existing parties in the party's absence; (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired; or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined.  Fed. R. Civ. P. 19(a)(1).

The moving party has the burden of showing a party is required. *See Rotec Indus., Inc. v. Aecon Grp., Inc.,* 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006).  Here, Defendants fail to carry their burden to show that Jiawei Qiu is a required party. Specifically, Defendants' argument that Mr. Qiu is a required party is based on the fact that he is the record-owner of the brand OROLAY®.

Defendants also claim that Mr. Qiu is a required party because he will "try a second bite at the apple" should Plaintiff lose this case.

*The fact that Mr. Qiu owns the trademark OROLAY ® jacket has no relevance here and does not make him a necessary party*. As set forth above, this action was brought to curtail Defendants' online infringing activities that affect *Plaintiff's trade dress rights*. It is the Plaintiff, not Mr. Qiu, who owns the trade dress that is the basis for the infringement claims at issue. As Mr. Qiu has no ownership interests in the trade dress, Defendants cannot show that Mr. Qiu's absence will "as a practical matter impair or impede [his] ability to protect" his interests in the trade dress or prevent the court from "according complete relief to existing parties".

*Defendants fail to demonstrate that they are subject to any risk of double liability or repetitive litigation.* Given that Mr. Qiu does not own the trade dress in question, there is no basis for Defendants to claim that Mr. Qiu will "try a second bite of the apple" because Mr. Qiu cannot bring a case against them, and a later case is likely barred by res judicata as Mr. Qiu is considered privy to Plaintiff (Mr. Qiu is the CEO of Plaintiff) so he will not be able to relitigate against Defendants any judgment in this action. *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 688 (7th Cir. 1986). Defendants have failed to establish any other facts that would support a finding of Mr. Qiu being a required party to this action, and for this reason and the foregoing reasons, Defendants' motion to dismiss should be denied.

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court deny Defendants' Motion to Dissolve and Motion to Dismiss. In the event that the Court is inclined to grant Defendants' Motion to Dismiss, in whole or in part, Plaintiff respectfully requests leave to amend the Complaint to cure any defects in its pleading.

Dated: July 22, 2021          Respectfully submitted,

         */s/ Edward Chen*

         Edward Chen (CA Bar No. 312553)
         YK Law LLP
         125 South Wacker Dr. Suite 300
         Chicago, Illinois 60606
         (213) 401-0970
         echen@yklaw.us

         *Attorneys For Plaintiff*
         *Jiaxing Zichi Trade Co., Ltd*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: *<u>/s/ Edward Chen</u>*
Edward Chen