**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JIAXING ZICHI TRADE CO., LTD., ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> ) <br> Ling YANG, d/b/a Emperor Goose, ) <br> Xianchun JIANG, d/b/a FADSHOW, and **)** <br> Shanshan MA, d/b/a Raddzo, et al. ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:21-cv-973 <br><br> Judge: Martha M. Pacold <br><br> Magistrate Judge Young B. Kim |

<u>REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISSOLVE EX PARTE PRELIMINARY INJUNCTION ORDER AND DISMISS</u>

**INTRODUCTION**

This is a case about unregistered product configuration trade dress, which requires that the visual appearance of product that identifies the source of the product to consumers.[1] A famous example is the Coca-Cola bottle -- anyone who sees that shape, even without seeing the words "Coca-Cola," instantly recognizes the product is from that company. Where there is no connection between appearance and a single source, there is no enforceable trade dress, and under the fact here, Plaintiff's overall appearance could just as well be sourced by Sacai, Balenciaga, or Zara. *see* Defendant's Exhibit 37, doc 17, and stipulated Exhibit 37 Enlarged showing Zara sold the same winter coat earlier or nearly as early as

---

[1] Merges, Robert P.; Menell, Peter S.; Lemley, Mark A.; Lemley, Mark A.(2007). Intellectual Property in the New Technological Age(4th rev. ed.). New York: Wolters Kluwer. p. 29. ISBN 978-0-7355-6989-8.

1

Plaintiff. The design may be so common as to be generic and also include competitively needed feature making it functional."[2]

Related, is that product configuration trade dress, if capable of indicating source, must also have "secondary meaning" evidence showing that the particular source recognized by consumers is plaintiff. Ambiguity, generality, and insufficient connection between circumstantial evidence and the particular plaintiff can be fatal. Thus, it is critical that plaintiff's evidence prove the connection to plaintiff and not some other legal entity such as the trademark owner of the word mark which is promoted.

Given the ambiguity in identification, plaintiff's failure to prove consumers identify plaintiff or the trademark owner, one sure way to check is to look up the mandatory identification of legal entity required for all textile products sold in the USA. After receiving plaintiff's brief, counsel obtained a product sample and checked the labels for one of (1) the full corporate name or (2) the FTC registered identification number (RN) in compliance with the Fur, Textile and Wool Labeling Rules, 16 C.F.R. § 303. This new evidence shows that while the corporate name is absent, the RN is not legitimate – searching the FTC database for the number brings up zero identification. [3]

**ARGUMENT**

A. The Design Patent application in U.S. Patent Office

Another new, troubling, piece of evidence is that design patent application No. 29/684,602 was filed on March 22, 2019 and Plaintiff's counsel attached as his Exhibit A, a Notice of Allowance stating "On May 27, 2021, notice from the United States Patent and Trademark Office was mailed to Plaintiff titled "Notice of Allowance and Fee(s) Due" for the design of the Orolay jacket. (Chen Decl. ¶2; Exhibit A of Plaintiff's opposition). If true, and if Qiu Dec. ¶4 doc. 7-1 is also true, then there is a serious

---

[2] "[W]e do not think it could claim trade dress protection and forbid others to make rectangular calculators, or even rectangular calculators having specified proportions, even if other shapes would not be more expensive to make." *Hanig & Co., Inc. v. Fisher & Co., Inc.,* 1994 U.S. Dist. LEXIS 20422, 1994 WL 97758 at *4 (N.D. Ill. Mar. 24, 1994).

[3] *Erva Pharmaceuticals Inc. v. American Cyanamid Co.* 755 F Supp 36, 19 USPQ 2d 1460 (D PR 1991) (violation of FDA regulations made use of mark at issue unlawful, therefore, plaintiff could not enforce mark according to *Strey v. Devine's Inc.* 217 F2d 187 (7th Cir 1954)).

question of patent fraud. Both the inventor and the attorney prosecuting the application were under duties to disclose public use more than a year before the filing date of the application. 37 CFR 1.56. If the Orolay jacket were sold in 2013, no patent application filed on March 22, 2019 could be valid. There was a year deadline for Plaintiff, and the Zara publication is an absolute bar. 35 U.S.C. §102 (a)[4]  A person shall be entitled to a patent unless (a) the invention was known or used by others in this country --. Fraud in the Patent and Trademark Office involving the subject of litigation evidences unclean hands.

      Defendants seek leave to supplement to add the evidence of illegal product sales to clarify issues raised earlier and the identity argued by Plaintiff.  The argument regarding patent fraud specifically arises from facts placed in the record by Plaintiff.

### I. MOTION TO DISSOLVE EX PARTE TEMPORARY RESTRAINING ORDER BASED ON PLAINTIFF'S GENERIC TRADE DRESS

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000) expressly set forth the requirement for secondary meaning in product configuration trade dress cases but is conveniently omitted by Plaintiff.  Notably, the earlier cases which might have implied there could be inherent distinctiveness are overruled by Wal- Mart. Wal-Mart, like the present case, involved garment product configuration.

**A. After Review, Plaintiff Should Not Have Reasonable Likelihood Of Success On The Merits Because Plaintiff's Trade Dress Is Not Protectable.**

Since pre-trial injunction is drastic remedy, the movant of the Preliminary Restraining Order bears the burden to "**clearly show**" it will likely succeed on the merits with respect to unprotectable trade dress. *Graham v. Medical Mutual of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997).

---

[4] "A person shall be entitled to a patent unless—
(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; * * * (b) Exceptions.—
(1) Disclosures made 1 year or less before the effective filing date of the claimed invention.—A disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if— (A) the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor."

*Curtis v. Thompson,* 840 F.2d 1297 (7th Cir, 1988) involved facts quite the opposite of those here. There, the public interest was expressed in the statute the Plaintiff there sought to enjoin. Here the balancing is more demanding. There might be an interest in protecting legitimate trade dress rights, but this is always balanced against the right of the public to have more choices, more competition and lower prices[5]. *Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153 (1984), also cited by Plaintiff affirmed denial of the preliminary injunction based on inadequate proof of likely confusion with the surname trademark, and was only reversed in reliance on the Illinois trademark dilution statute, not at issue in this case.

## 1. PLAINTIFF HAS FAILED TO CREDIBLY SHOW WHO OWNS THE ALLEGED TRADERESS

For unregistered trade dress, Plaintiff must prove that it, not someone else, owns the trade dress. *See* 15 U.S.C. § 1125(a); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001); *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994). The complaint does not specifically allege ownership and the moving papers supporting the Preliminary Injunction assert ambiguity about what legal entity is the recipient of any identification and goodwill conveyed by the look of the product. Relating to both the Preliminary Injunction and the Motion to Dismiss for failure to enjoin an indispensable party, (1) the generalized statements about promotion always connect the trade dress to the trademark OROLAY and (2) the trademark OROLAY is not owned by Plaintiff, it is owned by Mr. Qiu.

---

[5] *Kellytoy Worldwide, Inc. v. Ty, Inc*. 2020 WL 5026255 (ND Ill 2020) ("The public interest is served in granting injunctions against likely infringers "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469. At the same time, "[a]llowing competitors to copy will have salutary effects in many circumstances," *TrafFix Devices*, 532 U.S. at 29, as "consumers benefit from the option to buy a copy that has some added premium (e.g., faster delivery, cheaper pricing) provided by the competitor," *Badger Meter*, 13 F.3d at 1151 (citations and internal quotation marks omitted); see also *TrafFix Devices*, 532 U.S. at 29 ("Trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products. In general, unless an intellectual property right such as patent or copyright protects an item, it will be subject to copying."); *Samara Bros.*, 529 U.S. at 213 ("Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness."); *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 825 (7th Cir. 2016) ("Trademark, by contrast [to copyright], is aimed not at promoting creativity and invention but rather at fostering fair competition.").")

As previously pointed out, the new evidence of product labeling, absence of corporate name and incorrect RN number show that the normal way the public can verify who makes or distributes textile products is absent. So there is no way to corroborate whether Plaintiff, or some other legal entity is the source of the goods.

Since a third party sold the same trade dress, there is doubt whether it would be identified with Plaintiff. By stipulation with the Plaintiff, Exhibit 37 Enlarged now more easily identifies – indicated by an added arrow – that a company known as Zara sold substantially same coat as earlier as December 8, 2013. Complaint, ¶ 2 alleges Plaintiff's coat was sold the same year, while Complaint ¶ 21 alleges "exclusive" use – but not the date Plaintiff started.

Ex. B and C show the winter coat that Plaintiff claims as trade dress became very popular in China and South Korea back in 2012. Here, Plaintiff has spotted popular winter coat on the market and made counterfeits based on Zara or others in whole and started to sell at Amazon in 2013. Plaintiff used the self-serving declaration stating "that because the design of the winter coat is used as a source identifier to its consumers, therefore, Plaintiff owns the trade dress." If Plaintiff's logic is correct, the first appropriates the mark through use, here, Zara or other brands, should own the trade dress. *See Johnny Blastoff v. Los Angeles Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999).[6]

## 2. PLAINTIFF'S "TRADE DRESS" IS NOT ENFORCEABLE BECAUSE IT IS GENERIC

1. The Definition of Generic Trade Dress.

While "generic" more literally refers to the meaning of words, the term also is used to refer to categories of products that are so common that they are free for anyone to sell. It is in this sense that the

---

[6] Plaintiff reiterates this case is about trade dress, but not trademark. Unbeknown to the Plaintiff, trade dress is a subset of trademark law, which protects designs that function as a trademark. Exhibit 1 of Complaint lists goods and services in class 20 of furniture, which does not include winter coat.

5

term is used to identify common, non-distinctive, features, incapable of serving to designate origin – even if they are non-functional, not conceded here.

Product design almost invariably serves purposes other than source identifier. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000). "A product design may be generic if it is the basic or a basic form of a type of product." *Big Island Candies, Inc. v. Cookie Corner*, 269 F. Supp. 2d 1236, 1240 (D. Haw. 2003).

Trade dress law thus does not protect a generalized type of appearance. *Yurman*, 262 F.3d at 115-116. Trade dress law also does not protect "basic" design features because of the concern that producers will be able to use trademark law to monopolize products. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2nd Cir. 1997). *See* also *Indonesian Imports, Inc. v. Smith*, 1999 U.S. Dist. LEXIS 4237, 1999 WL 183629 at 6 (N.D. Cal. Mar. 30, 1999) (refusing trade dress protection to a "basic crocheted handbag"). Finally, a product design may be "generic" because it is so common in the industry or in the marketplace that it cannot be said to identify any particular source.

2. Plaintiff's Coat Fits Every Formulation of Trade Dress "Genericness" or Commonality

Plaintiff's alleged trade dress ---1. voluminous paneling; 2. multiple zippers; 3. oversized pockets; 4. cocoon-like shape that is shorter in the front and longer in the back — is a paradigm of a generic design that no amount of secondary meaning can make "distinctive." *Indonesian Imports, Inc. v. Smith*, 1999 U.S. Dist. LEXIS 4237 (N.D. Cal. Mar. 30, 1999) (woven handbag shape generic).

The Plaintiff's coat features are commonly used in the clothing industry, in the coat industry, and even in the exact market for the Plaintiff's product. *See* Exhibits 3-37. The alleged trade dress at issue here has no distinguishing features, no special colors, material, or markings. It does not even have an unusual shape or size, even though neither shape nor size can be protected trade dress. In the case of product design,

> we think consumer predisposition to equate the feature with the source does not exist. Consumers are aware of the reality that, almost invariably, even the most unusual of product designs – such as a **cocktail shaker shaped like a penguin** – is intended not to identify the source, but to render the product itself more useful or more appealing.

6

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212 (2000). Since no showing of secondary meaning or likelihood of success can protect a generic shape, this Court's analysis can end here, and the preliminary restraining order should be dissolved.

**D. THE PLAINTIFF'S COAT IS PURELY FUNCTIONAL**

As discussed before, the Plaintiff does not own the trade dress and the Plaintiff's alleged trade dress is not valid due to genericness, thus never protectable, so we do not need to go into other elements of the trade dress infringement. However, even if the Court considers the Plaintiff owns the trade dress and the alleged trade dress is valid, the Plaintiff's alleged trade dress is functional, thus never protectable.

**1. Standards for Determining Functionality**

A product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article, *TrafFix Devices v. Mktg. Displays*, 532 U.S. 23, 32, 149 L. Ed. 2d 164, 121 S. Ct. 1255 (2001), and if it is costly to design around or do without. *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1189 (7th Cir. 1989). Functionality is determined by a feature's usefulness. *Jay Franco & Sons, Inc. v. Franek,* 615 F.3d at 858. Thus, a design that enables a product to operate is functional and it may not be trademarked. *Id*. at 857. "Expanding upon the meaning of this phrase, [the Supreme Court has] observed that a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165).

Looking at the Preliminary Injunction and moving papers, granted *ex parte*, in light of the more complete evidence presented, Plaintiff does not meet its burden of proving that the matter sought to be protected is not functional. *TrafFix Devices*, 532 U.S. at 29. *See* also, *Wal-Mart Stores*, 529 U.S. at 210. Thus, inadequate proof of nonfunctionality – on which Plaintiff bears the burden of proof – is dispositive of all its trade dress claims.

**2. The "Coat" Is Purely Functional and Therefore Not Entitled To Trade Dress Protection.**

Numerous Coats designed to keep a wearer warm use the exact same design and shape as Plaintiff's. Thus, the shape and design of the Coat is essential to its use or purpose. Both the purpose and

7

the use of the voluminous paneling, multiple zippers, oversized pockets is to contain useful items for a wearer that is both convenient to open and fits easily into a pocket. Thus, the pockets must have a convenient shape and size to hold the utility items, which requires a rectangular or square shape of sufficient width and depth to both hold the various items, but still small enough to fit in the front of the coat. A top-opening zipper and vertical zippers allow the consumer to easily access the contents of the pockets while leaving it in a pocket, if necessary. The alleged "cocoon-like shape that is shorter in the front and longer in the back—" are merely structural elements that are not only commonly used in the manufacture of numerous Coats, but are one of only a few options available to keep the wearer an added coverage to their rears. The side zipper opens up to adjust fit and add range of motion without comprising warmth and protection.

Significantly more unique shapes than Plaintiff's generic Coat shapes have been found to be functional. In *Malaco Leaf*, 287 F. Supp. 2d 355 (S.D.N.Y. 2003), for example, the plaintiff distributed fish-shaped gummy candies. The Court held that extending Lanham Act protection to a common fish shaped gummy candy would prevent any other manufacturer from marketing fish-shaped gummy bears. *Malaco Leaf*, 287 F. Supp. 2d at 366.

### D. EVEN IF NOT FUNCTIONAL, PLAINTIFF CANNOT SHOW SECONDARY MEANING
**1. There Is Insufficient Evidence of Secondary Meaning When Contrary Evidence Is Considered.**

Assuming arguendo the generic is not functional, the Preliminary Injunction should be dissolved after, upon review, it is recognized the circumstantial evidence of sales and commentary does not either support a conclusion (1) it connects the appearance with a source or (2) any source indication is not connected to plaintiff.

*Ohio Art Co. v. Lewis Galoob Toys, Inc.* 799 F.Supp. 870, 25 U.S.P.Q.2d 1496 (ND Ill 1992) pointed out "Secondary meaning cannot be established by advertising that merely pictures the product and does nothing to emphasize the mark or dress (*id.* at 818 (another case dealing with a plaintiff that sought to obtain a monopoly over a product's configuration); *Textron, Inc. v. United States Int'l Trade Comm'n*, 753 F.2d 1019, 1027 (Fed.Cir.1985) (no evidence that "promotions focused buyers' attentions on the

8

shape of the machine or that the design of the column and ram was featured in any way")). "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself" (*Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n. 11, 102 S. Ct. 2182, 2187 n. 11, 72 L.Ed.2d 606 (1982). Plaintiff's evidence, when reviewed, is nothing more than that is pointed out in *Ohio Art*: it is only advertisements trying to sell a product, it is not advertisements that say: "buy a product that looks like this because you know we (whoever they are) are a reliable source" see. 1 McCarthy on Trademarks, § 7:30 (4th ed.1996) (presence or absence of "look for" promotion is relevant to the issue of secondary meaning); *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378 (9th Cir.1987) (total advertising expenditures and its five-year, exclusive use of the container did not "attempt to engender consumer identification with the yellow, F-style jug.")

As previously pointed out, even if we assume, *arguendo*, some source is indicated, Plaintiff's own argument and evidence show we do not know who the source is. While it could be a single source, we don't know if it is Plaintiff --- who is never identified anywhere – or the owner of the OROLAY trademark, not a party to this litigation. This issue has been discussed at length. Throughout its arguments, Plaintiff connects its purported secondary meaning to OROLAY which it does not own, and its owner is not a party to this litigation.

In addition to the internal inconsistency – Plaintiff or the owner of OROLAY – there is also an issue presented regarding whether the same quality of advertising by third parties directs consumers' attention at least to origin in no particular source. Plaintiff's admits its sale was in the same year as Zara Exhibit 37 Enlarged as Ex. A.[7]

---

[7] Not in the record, but scrolling down on the Orolay page on Amazon reveals that the Orolay coat was shortly after the Zara coat, Dec. 16 2013 v. Dec. 8, m2013, https://www.amazon.com/Orolay-Womens-Thickened-Jacket-Green/dp/B00HHOXQP8/ref=sr_1_1_sspa?dchild=1&keywords=Orolay+First+Sale&qid=1627601939&sr=8-1-spons&psc=1&smid=A2L41BJLE6LBDZ&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUEzNENEQ0JRTTdBV05EJmVuY3J5cHRlZElkPUEwODAwMTc3MURPS1MzSVkxT0FKRCZlbmNyeXB0ZWRBZElkPUEwMDM0MjIzMjhVTEVVKMlhHSU9CSSZ3aWRnZXROYW1lPXNwX2F0ZiZhY3Rpb249Y2xpY2tSZWRpcmVjdCZkb05vdExvZ0NsaWNrPXRydWU= which priority will be appropriate for discovery if the case goes further

9

Third party use is shown in Exhibits that identify nine specific third party brands as the source of coats that look substantially the same. Some are clearly identified, well known brands, Macys, Tommy Hilfiger (Exhibit 3) Nordstrom Rack, (Exhibit 4) Nordstrom Rack selling Sam Edelman (Exhibit 5) Donna Karan, DKNY (Exhibit 6) and Steve Madden (Exhibit 8).

Amazon is ubiquitous and sometimes identifies known sources like Steve Madden (Exhibit 9) and sometimes not particularly familiar brands – but not Plaintiff -- ZIHJIA (Exhibit 10) Abollria (Exhibit 13) ANNA-CHRIS (Exhibit 14) Shanghai-Bund (Exhibit 15) Beyove (Exhibit 17)

There are nine sources not Plaintiff's. The premise that Plaintiff can prove it is the exclusive source is not, after review of these uses, determinable in Plaintiff's favor for maintaining a Preliminary Injunction.

One final fact is that at least one consumer thought it was Plaintiff who was a copycat – the opposite of what Plaintiff wants. At least one customer asked on Amazon "Zara made the exact same coat in 2013, do you have the copyright to this coat or is this a copy cat of Zara? "(Ex. D, enlarged for a better view of Ex. 38). At this time the question needs not prove it is true, or not, but it is evidence of the state of mind of a consumer who thinks Zara, not Plaintiff, is the original source.

### B. A New Ground to Dissolve the Preliminary Injunction is Plaintiff's Unclean Hands.

Unclean hands is a defense to an injunction and "can constitute a bar to some or all of the relief sought." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:44 (4th ed. 1999). "A court may deny injunctive relief based on the defense of unclean hands 'where the party applying for such relief is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party.'" *Estate of Lennon v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (quoting *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995) (quoting *Novus Franchising, Inc. v. Taylor*, 795 F. Supp. 122, 126 (M.D. Pa. 1992))).

### Patent Fraud And/Or False Declaration

As pointed out above, Plaintiff made of record design patent application No. 29/684,602 filed March 22, 2019.  Plaintiff must consider it intimately connected to the matters presented to the Court, thus one common unclean hands hurdle – related to the matter at issue – is met.  The Complaint, ¶2 says the product was on sale in 2013.  Simple math shows 2013 is at least five years (if it were December 31, 2013, or December 16, 2013 which seems more likely) from March 22, 2019 and if the first sale entitled Plaintiff to the one year grace period, still more than four years before the filing date.  Since the inventor, Renaissance Man Jiaweh Qiu (entrepreneur, chief executive of a company, Document #: 7-1, trademark owner, Reg. No. 5,475,044 and inventor of clothing, all while having a gross income less than about $200,000) must have filed an Oath stating there were no invalidating sales, in 2019, and yet he also filed a Declaration Document #: 7-1 saying "In 2013, Plaintiff debuted its new Orolay® Women's Thickened Down Jacket (hereinafter "the Orolay® jacket") in the United States, which is now sold throughout the U.S. on its Amazon store and on Plaintiff's own website."

Putting aside the unlikely possibility that Plaintiff submitted to this court a Notice of Allowance for a patent application entitled "Jacket" which has absolutely nothing to do with the product at issue, Mr. Qiu either (1) lied in the patent application Oath or (2) lied in the Declaration submitted to the court.  Or it might have been both.

Additionally, patent filing fees can be reduced to help small companies and individual inventors.  A "Small Entity" pays half of what a big company pays. A rule of thumb is that fewer than 500 employees is required.  A "Micro Entity" describes an individual who is, essentially, not in business and is intended to qualify individual inventor who have less than about $200,000 in gross income.  The amount varies and was $206,109 at this writing.  An independent inventor – Micro Entity – pays half again.  Plaintiff's Notice of Allowance shows Mr. Qiu claimed Micro Entity status. Cheating on status cheats at least other US patent applicants who pay full fees. (Taxpayers may not be affected depending on Patent Office budget legislation).  Lying about status to save a few hundred dollars is also unclean hands.

 **Noncompliance With Textile Product Labeling Requirements 16 C.F.R. § 1.303 et seq.**

11

As pointed out above, counsel only recently obtained a product sample of an OROLAY coat. Inspection of the labels reveals that neither of the two means acceptable to identify the manufacturer or distributor is present. 16 C.F.R § 303.16 (2) requires, simply: "The name, provided for in §303.19, or registered identification number issued by the Commission, of the manufacturer or of one or more persons marketing or handling the textile fiber product." The trademark registration for OROLAY is for furniture/flooring, not textile products, so it cannot meet the requirement. However, the product does bear a RN -- registered identification number – No. 4778909. Checking the FTC RN database however, reveals there is no such number.

Identification is simple: register a mark for the goods, use a corporate name, or register a RN. The public need is that if there are adverse properties from the textiles – allergy, flammability, care – the consumer can find out who to call. Flouting the rules makes the product illegal to distribute in the USA. Illegal products do not support trademark cases. *Erva Pharmaceuticals Inc. v. American Cyanamid Co.* 755 F Supp 36, 19 USPQ 2d 1460 (D PR 1991) *also see Strey v. Devine's Inc.* 217 F2d 187 (7th Cir 1954); *Kiva Health Brands LLC v. Kiva Brands Inc.* 402 F.Supp.3d 877 (N.D. Cal 2019)

## II. MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO JOIN

These two issues are complementary with the points discussed above about ownership of the trade dress. The Complaint and moving papers make conclusory allegations but suffer from ambiguity about who really owns the identity at issue. Mr. Qiu owns the registration placed at issue and is not a party. Plaintiff is identified as some sort of exclusive distributor – not typically the owner of the identity. And the circumstantial evidence of secondary meaning never identifies Plaintiff, only identifying Mr. Qiu's trademark.

Important is that Mr. Qiu's involvement is sought not because he owns the Plaintiff business. The cases cited by Plaintiff generally involve typical corporate veil scenarios. Here, however, to prevail, a Plaintiff must prove it owns the property that it alleges at issue. Indications are Plaintiff does not and

Mr. Qiu does. Plaintiff even puts into a play with a Patent Application that appears to be filed individually by Mr. Qiu.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court to grant the Motion to dismiss, finding that Defendants did not infringe Plaintiff's generic trade dress; and to dissolve the Preliminary Restraining Order as to freeze Defendants' Amazon account.

Defendants also pray for relief, including damage due to the Preliminary Restraining Order, and attorney's fees to the extent permitted under the applicable law and other relief as the Court deems appropriate

Respectfully submitted,

*/s/ Frank Y. Gao*

One of Plaintiff's attorneys

**Attorney for Defendants,**
Ling YANG d/b/a Emperor Goose,
Xianchun JIANG d/b/a FADSHOW,
Shanshan MA d/b/a Raddzo

Frank Gao
David C. Brezina
Ladas & Parry LLP
224 S. Michigan Ave. Suite 1600
Chicago, Illinois 60604
(312) 427-1300

## CERTIFICATE OF SERVICE

**I hereby certify** that on June 29, 2021, I electronically filed the foregoing Motion and Notice of Motion using the Court's CM/ECF system, causing a notice of filing to be served upon all counsel of record.

*/s/ Frank Y. Gao*

One of Plaintiff's attorneys

**Attorney for Defendant,**
Ling YANG d/b/a Emperor Goose,
Xianchun JIANG d/b/a FADSHOW,
Shanshan MA d/b/a Raddzo

Frank Gao
David C. Brezina
Ladas & Parry LLP
224 S. Michigan Ave. Suite 1600
Chicago, Illinois 60604
(312) 427-1300