**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JIAXING ZICHI TRADE CO., LTD<br><br>               Plaintiff,<br><br>    v.<br><br>LING YANG, d/b/a Emperor Goose, CAO ZI QI, d/b/a FADSHOW, and SHANSHAN MA, d/b/a Raddzo, and DOES 1-50, inclusive,<br><br><br>          Defendants. | Civil Action No.: 1:21-cv-00973<br><br>Hon. Martha M. Pacold |

**AMENDED COMPLAINT**

Plaintiff Jiaxing Zichi Trade Co., Ltd ("Plaintiff") hereby files this Amended Complaint ("FAC") against Defendants LING YANG d/b/a Emperor Goose, CAO ZI QI d/b/a FADSHOW, SHANSHAN MA d/b/a Raddzo, and Does 1-50, inclusive, (collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1.    Plaintiff files this action to seek monetary damages and injunctive relief based on Defendants' blatant and unlawful misappropriation of Plaintiff's unique, distinctive and non-functional trade dress in connection with the sales and/or offering for sale of low-quality knock-off winter jackets on Amazon.com. The requested relief is warranted and based upon Defendants' violations of the federal Lanham Act for trade dress infringement, false designation of origin, and violations of the Illinois Uniform Deceptive Trade Practices Act.

2.     In 2013, Plaintiff debuted its Orolay® Women's Thickened Down Jacket (hereinafter "the Orolay® jacket").  The Orolay® jacket is distinctive and instantly recognizable, featuring voluminous paneling, multiple zippers (including side zippers that can be unfastened for a more stylish and relaxed fit), oversized pockets and a cocoon-like shape that is shorter in the front and longer in the back.  The Orolay® jacket has enjoyed massive success and wide publicity and has been spotted on celebrities, social-media influencers and many others.



3.     On information and belief, Defendants are part of an illegal network of manufacturers and sellers which involve low-quality, knock-off jackets that copy the same style, look and feel of Plaintiff's celebrated Orolay® jacket.  Defendants' unlawful actions amount to a blatant, willful and conscious disregard for Plaintiffs rights, and were knowingly and intentionally taken to piggyback off of the enormous popularity, goodwill and success of Plaintiff's highly

recognizable, unique and valuable design. Such conduct has caused and continues to cause confusion to the public and injury to Plaintiff.

4. Plaintiff hereby seeks to curtail the unlawful activity and illegal counterfeiting by preventing Defendants continued infringement, dilution and misappropriation of Plaintiff's valuable trade dress rights. Defendants' misconduct is harmful and will continue to cause Plaintiff injury, including by lost sales, diminished reputation in the marketplace and the dilution of its valuable intellectual property, unless and until this Court enjoins it. By this suit, Plaintiff is seeking compensatory damages, enhanced damages, attorneys' fees and costs, injunctive relief, relief authorized under federal and Illinois law, and any relief that this Court may deem just and proper.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 § U.S.C. 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly target business activities toward Illinois consumers through their operation of fully interactive, commercial Internet store operating on Amazon.com, which offers for sale and/or sells products that infringe Plaintiff's trade dress to residents of Illinois. Specifically, Defendants are involved in the production, listing for sale, sale, and/or shipping of products to Illinois residents that use infringing copies of Plaintiff's trade dress. Defendants have committed and knowingly

participated in the commission of tortious acts in Illinois, causing Plaintiff substantial injury in the State of Illinois.

7.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and within this Judicial District by operating online stores located on Amazon Marketplace, and the acts and events giving rise to this lawsuit, of which each Defendant stands accused, were undertaken in Illinois and within this Judicial District.

## PARTIES

8.      Plaintiff Jiaxing Zichi Trade Co., Ltd is a foreign company organized and existing under the laws of People's Republic of China with a principal place of business at 6th Floor, Tower 9A, No. 36 Changsheng South Rd, Jiaxing, Zhejiang Province, China.

9.      Upon information and belief, Defendant Ling Yang, d/b/a Emperor Goose ("Yang"), is an individual residing in the People's Republic of China.  Upon further information and belief, Defendant Yang is the owner and operator of an Amazon.com storefront account which operates under the brand name "Emperor Goose".

10.      Upon information and belief, Defendant Cao Zi Qi ("Qi") is an individual residing in the People's Republic of China.  Upon further information and belief, Defendant Yang is the owner and operator of an Amazon.com storefront account which operates under the brand name "FADSHOW".

11.      Upon information and belief, Defendant Shanshan Ma ("Ma") is an individual residing in the People's Republic of China.  Upon further information and belief, Defendant Ma is owner and operator of an Amazon.com storefront account which operates under the brand name "Raddzo".

12. Plaintiff is informed and believes, and on that basis alleges, that Defendants are individuals and/or business entities who reside in the People's Republic of China and conduct business throughout the United States, including within Illinois and in this Judicial District, by operating online stores located on Amazon Marketplace under multiple fictitious seller names.

13. Plaintiff's investigation regarding the true identities and possible corporate structures for each of the Defendants is ongoing, and Plaintiff will take appropriate steps to amend this Complaint if additional identifying information is subsequently discovered. Nevertheless, the design elements and similarities of the knock-off products demonstrate a logical relationship between the Defendants and suggesting that their illegal operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

## FACTUAL ALLEGATIONS

**The Orolay® Jacket – aka "The Amazon Coat"**

14. Since its inception, Plaintiff has devoted extensive skill, effort, ingenuity, capital and other resources in designing, creating, manufacturing, marketing, and selling high-quality and stylish apparel in the United States. Plaintiff is the original designer, manufacturer, and distributor of its recent hit-product, the "Orolay® jacket".

On _____, 2012, Plaintiff made its first initial sale of the Orolay® jacket to a United States consumer.

15. Starting in 2013, Plaintiff officially debutedofficially introduced tThe Orolay® jacket was introduced into the U and made available for sale to the United States through its Amazon store and on Plaintiff's own website, and at least as early as October 9, 2013, Plaintiff made its first sale of the product to a consumer in the United States. Since then, Plaintiff hasand began conducted extensive marketing effortsting its marketing of in conjunction with its sale of

the Orolay® Jacket to consumers in the ~~its product towards the~~ U.S. marketplace~~., in conjunction with Plaintiff's listing of the product for sale on~~ ~~in 2013 when Plaintiff started to market and sell it on Amazon.com.~~

~~15.~~16.  The Orolay® jacket is a high-quality down jacket with unique, distinctive, and non-functional designs.  As discussed above, the coat is paneled and cocoon shaped which is shorter in the front and longer in the back, featuring multiple oversized pockets and zippers including side zippers that can be unfastened for a stylish and more relaxed fit.

17.    In or around July 21, 2015, the Orolay® mark was registered (U.S. Registration Numbers 4778909).  The Orolay® trademark has been used exclusively by Plaintiff for many years and has never been abandoned.  The U.S. registration for the Orolay® trademark is valid, subsisting, and in full force and effect.  The registration for the Orolay® trademark constitutes *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Orolay® trademarks pursuant to 15 U.S.C. § 1057(b).  A true and correct copy of the United States Registration Certificates for the Orolay® trademark is attached herewith as **Exhibit 1.**

18.    Since October 2015, Plaintiff has been the sole exclusive authorized distributor of products bearing the Orolay® trademark. ~~and Plaintiff~~ has since become the exclusive authorized distributor of products bearing the Orolay® trademark.  A true and correct copy of the exclusive distributor authorization granting Plaintiff exclusive rights to the Orolay® trademark is attached herewith as **Exhibit 2.** ~~The Orolay® trademark has been used exclusively by Plaintiff for many years and has never been abandoned.  The U.S. registration for the Orolay® trademark is valid, subsisting, and in full force and effect.  The registration for the Orolay® trademark constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use the Orolay®~~

trademarks pursuant to 15 U.S.C. § 1057(b).   A true and correct copy of the United States Registration Certificates for the Orolay® trademark is attached herewith as Exhibit 1.

16.

17.19.  Plaintiff has exerted an enormous amount of time, money and effort to extensively and continuously promote and utilize the Orolay® brand in conjunction with the designs for the Orolay® jacket in the United States and in Illinois.  As a result, the Orolay® jacket gained notoriety and has consistently remained as a number one best-seller for women's coats on Amazon.com. Plaintiff's success in promoting and marketing the Orolay® jacket has also resulted in Plaintiff's jacket being referred to as the "Amazon coat".

20.     Media reports show that in early 2018, Plaintiff began its rise to popularity[1], earning its place in the fashion industry and becoming well-known for its distinctive Orolay® Women's Thickened Down Jacket to consumers worldwide.  In a February 21, 2019 article published by CNBC titled "Why the 'Amazon coat' from this Chinese brand is a hit with US consumers" the article begins by stating that "[a] $129.99 winter coat by Chinese fashion label  Orolay[®] has become a number on best-seller on Amazon, becoming so popular it is now known as the 'Amazon coat,' after going viral on social media", which is an accurate depiction of the immense popularity of Plaintiff's product.[2]   The Orolay® jacket also caught the attention of various celebrities

---

[1] Schneider, Katy. "The Unlikely Tale of a $140 Amazon Coat That's Taken Over the Upper East Side" New York Magazine, March 27, 2018. (https://nymag.com/strategist/amp/2018/03/the-orolay-amazon-coat-thats-overtaken-the-upper-east-side.html) (last accessed Jan. 27, 2021)

[2]   Handley, Lucy. "Why the 'Amazon coat from this Chinese brand is a hit with US consumers" CNBC, February 21, 2019.  (https://www.cnbc.com/2019/02/21/why-the-amazon-coat-from-orolay-is-a-must-have-for-us-consumers.html) (last accessed Jan. 19, 2021)

including Oprah Winfrey when it was included in "Oprah's Favorite Things 2019 List" for the holiday season. [3]

18.21.  In 2020, Plaintiff spent over $150,000 in advertising costs alone for the Orolay® Jacket, resulting in over 74,000,000 advertising placements to consumers online and solidifying a social media presence of the Orolay® Jacket.  Plaintiff has made a deliberate effort to distinguish the Orolay® Jacket from other products by creating a website, Facebook page, Instagram Account, Twitter account and other social media accounts to market and publicize the Orolay® Jacket. Plaintiff explicitly places the registered mark in conjunction with the Orolay® Jacket in its advertisements in an effort to inform the public that the overall "look and feel" of the Orolay® Jacket are coming from a single source.

19.22.  Plaintiff's success in the design and sale of the Orolay® jacket is undisputable, as the Orolay® jacket has now been reviewed over 147,000 times on Amazon.  The Amazon reviews demonstrate and indicate that the unique and distinctive design of the Orolay® jacket has played a major role in the brand's success.  For example, consumers have noted the following about the Orolay® jacket: "[the] cut is nice and unusual"; "[the] unique design looks really sharp", and "the design is not like one I've seen before. It has a slight bell shape to it, which surprisingly is very flattering with every kind of outfit."

20.23.  Indeed, consumers widely recognize the unique and distinctive design as well as style of the Orolay® jacket as indicators of the products' origin and quality as coming from Orolay®.  Such design and/or styles have also acquired substantial secondary meaning in the

---

[3] http://www.oprah.com/gift/orolay-womens-thickened-down-jackets?editors_pick_id=77089

marketplace and have become famous. The Orolay® jacket has received and continues to receive a significant amount of unsolicited media coverage in various newspapers (including Reuters, New York Times and Wall Street Journal), magazines, online articles and popular social media platforms.

21.24.  By virtue of Plaintiff's persistent efforts and exclusive use of such design, and the highly valuable goodwill and substantial secondary meaning acquired as a result, Plaintiff owns trade dress rights in the design and appearance of the Orolay® jacket, which consumers have come to uniquely associate with Orolay®.

22.25.  Specifically, Plaintiff has trade dress rights in the overall look, and appearance of the Orolay® jacket, including but not limited to the design, appearance and placement of the panels, lines and curves in the Orolay® jacket; the design, appearance and placement of two chest pockets and their zipper closures; the design, appearance and placement of two front pockets and their zipper closures; the design, appearance and placement of two side pockets; the design, appearance and placement of the side zippers that can be unfastened for a more stylish and relaxed fit; the design and appearance of the hoods (with fur or not); the design and appearance of the cuffs; the length, shape, fit and overall style of the coat; and the relationship of these features to each other and to other features.

**Defendants' Unlawful Conduct**

23.26.  Upon information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell counterfeit products.

24.27.  The success of the Orolay® jacket has resulted in significant counterfeiting and efforts to create knock-off versions. Defendants conduct their illegal operations through fully

interactive commercial websites hosted on various e-commerce site such as Amazon.com. Defendants intentionally conceal their identities and the full scope of their counterfeiting operations in an effort to deter Plaintiff from learning Defendants' true identities and the exact interworking of Defendants' illegal counterfeiting operations.

25.28.  Plaintiff had used its trade dress extensively and continuously before Defendants began selling or offering to sell similar products in the United States.  Plaintiff's trade dress had also become famous and acquired secondary meaning in the United states before Defendants commenced their unlawful use of Plaintiff's trade dress.

26.29.  The similarity between Defendants' products and Plaintiff's Products is striking, as these products appear to be nearly identical.  Exemplary images of an authentic and original Orolay® jacket compared with knock-off, counterfeited versions of the jacket can be seen as follows:

| **Illustration 1: Exemplary Images of a Orolay® Jacket** [4] |
| --- |

---

[4]      Orolay Women's Thickened Down Jacket. Amazon Orolay Store. (last visited Jan. 24, 2021) (https://www.amazon.com/dp/B00HHOXSGK/)



| Illustration 2: Exemplary Images of FADSHOW/Raddzo's Infringing Product [5] | Illustration 3: Exemplary Images of Emperor Goose's Infringing Product [6] |
|---|---|



27.30.  The similarities between the products become even more profound on a closer look – as Defendants' products have precisely the same distinctive, unique and non-functional design elements as Plaintiff's products.  This overlap is deliberate and is intended to reinforce a perceived association between Defendants and Orolay®.

---

[5]     FADSHOW Women's Winter Thickened Down Jackets Long Down Coats Warm Parka with Hood.  FADSHOW Amazon Store.  (last visited Jan. 24, 2021) (https://www.amazon.com/dp/B077N28CTS)

[6]     Emperor Goose Women's Down Jacket Hooded Colorblock Puffer Parka Winter Down Coat.  Emperor Goose Amazon Store (last visited Jan 24, 2021) (https://www.amazon.com/Emperor-Goose-Womens-Jacket-Thickened/dp/B07YC8B56V)

28.31.  Specifically, Defendants' products have the same cocoon-shape which is shorter in the front and longer in the back, the same placement and style of the panels, the oversized pockets and zippers including the side zippers that can be unfastened, among other shared features.  Indeed, virtually every discernible aspect of the Defendants' products is intended to emulate the Orolay® jacket.  This overlap is remarkable and unmistaken given the limitless options available to design and manufacture a winter jacket, and yet, at every step of the way, Defendants consciously choose to mirror the look and feel of the Orolay® jacket.  Hence, the inescapable conclusion is that Defendants knowingly and intentionally sought out to copy the Orolay® jacket.

29.32.  As Defendants' products are largely indistinguishable from Plaintiff's products, this is likely to cause confusion, or cause mistake, or to deceive concerning the source of the parties' goods, and/or whether Plaintiff has sponsored, endorsed or licensed the Orolay® products to the Defendants (or vice versa), and/or whether there is any connection or affiliation between the two.

30.33.  Indeed, instances of actual confusion among consumers have already occurred based on the near identicality between the infringing products and Plaintiff's authentic Orolay® jacket.

34.    For example, one Amazon reviewer mistakenly believed that Defendants' products were the legitimate Orolay® jacket: "I have been eyeing the Amazon coat for a while, and wanted to get one – so I ordered this."  As another example, one reviewer commented that she was confused by the label of the coat, which was not Orolay®, and that she wasn't sure if the seller has any connection with Orolay®.  These comments demonstrate that Defendants' products have already caused actual confusion and will likely cause additional confusion among consumers because of Defendants' current and continuous use of Plaintiff's trade dress.

35.    Plaintiff is informed and believes, and thereupon alleges that Defendants' counterfeited versions of Plaintiff's jacket have caused widespread confusion to consumers who have been unfortunate enough to have purchased Defendants' counterfeit products.  Certain examples of consumers who have been duped by Defendants' products can be seen below:







31.36.  As one customer described above, "[I] ordered the Orolay coat in a medium after I tried on a co-worker's coat. I received a coat with a tag that said Dongxi, which was not what I expected. A side by side comparison of my friend's coat and this coat also revealed differences in material use. I suspect this coat became so popular that other brands began to sell knock-offs. The medium in the Dongxi brand fits like an extra small. Be very careful who you buy this from. You may not get what you expect."

37.    As a result of Defendants' malicious efforts in counterfeiting and selling fake, knock-off versions of Plaintiff's most popular product, actual U.S. consumers have been confused and harmed and will continue to be harmed by Defendants' actions.

32.38.  Further, even though Defendants' products are intended to look and feel like Plaintiff's products, the quality of Defendants' down coats are vastly inferior.  Amazon reviewers of Defendants' products have complained about the lack of quality control with respect to Defendants' products, including the inferior quality of zippers which got stuck all the time, the button popping off after one wear, and the seams being easily ripped apart.

33.39.  Because Defendants' products are counterfeited versions that may closely imitate the distinctive designs of the Orolay® jacket, their actions create a possibility that Plaintiff's trade

dress will no longer serve as a unique identifier of Plaintiff's products to consumers and therefore dilutes the brand. Even worse, the inferior quality of Defendants' products could tarnish the reputation that Plaintiff has worked very hard to develop, and on which Plaintiff has spent hundreds of thousands of dollars in promotions and advertising. As a result, Plaintiff will suffer lost sales and foregone business because of the improper and negative associations between Plaintiff's brand and the inferior knockoffs.

34.40. Defendants' blatant misappropriation of Plaintiff's valuable trade dress is done without Plaintiff's permission and without compensation to Plaintiff. At no time did Defendants obtain a license or any other permission or authorization from Plaintiff that would allow Defendants to make and sell products having the same look and feel as an authentic Orolay® jacket. Plaintiff is not aware of any effort made by Defendants to license or otherwise lawfully use Plaintiff's trade dress.

41. Defendants' conduct is both unlawful and unfair. Their use of Plaintiff's trade dress, including through knockoffs, reproductions, copies, and/or colorable imitations thereof, have been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by their almost exact copying of the famous Orolay® jacket, and their misuse was done with full knowledge of Plaintiff's intellectual property rights, and they chose to engage in these unlawful conducts to deceive and mislead the public into believing that their products are sponsored, licensed, authorized by, affiliated, connected, or otherwise associated with Orolay®.

35.42. Despite Plaintiff's efforts to market the Orolay® Jacket and increased advertising budget, sales of the Orolay® Jacket fell to nearly 40% of Plaintiff's sales in 2019, largely due upon information and belief to the significant counterfeiting activity conducted by Defendants.

16

36.43.  As such, Defendants' infringement has caused Plaintiff irreparable harm and will continue to cause irreparable harm to its reputation, the good will of Plaintiff's trade dress, the ability of that trade dress to serve as a source indicator for the products associated with that trade dress, and Plaintiff's ability to control the use of the trade dress so that it may function as a source identifier for Plaintiff's brand and products.

37.44.  Upon information and belief, Defendants own and hold no U.S.-based assets besides the U.S.-based Amazon accounts; therefore, Defendants are highly likely transfer all of the funds from their Amazon accounts to off-shore bank accounts outside of the jurisdiction of U.S. Courts and thereafter ignore the lawsuit and deny Plaintiff all means of redress without judicial intervention.

## CAUSES OF ACTION

### COUNT I
### TRADE DRESS INFRINGMENT (15 U.S.C. § 1125)

38.45.  Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

39.46.  Plaintiff's trade dress is entitled to protection under the Lanham Act. As discussed above, Plaintiff's trade dress includes the unique, distinctive, and non-functional designs and appearances of the Orolay® jacket.  Plaintiff has extensively and continuously promoted and used such trade dress in the United States.  Through that extensive and continuous use, Plaintiff's trade dress has become a well-known indicator of the origin and quality of Plaintiff's products, and it has acquired substantial secondary meaning in the marketplace.  Moreover, Plaintiff's trade dress had acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing products.

40.47.  Defendants' unauthorized use of Plaintiff's trade dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the infringing products, at least by creating the false and misleading impression that the infringing products are manufactured by, authorized by, or otherwise associated with Plaintiff, in violation of §43(c) of the Lanham Act, 15 U.S.C. § 1125(a).

41.48.  On information and belief, Defendants' violation has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the striking similarity between the infringing products and Plaintiff's trade dress and Defendants' continuing willful disregard for Plaintiff's rights.

42.49.  Defendants' use of Plaintiff's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's trade dress and products.

50.  Plaintiff is entitled to injunctive relief and to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1125(a), 1116, and 1117.

43.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

44.51.  Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

45.52.  Plaintiff's trade dress is entitled to protection under the Lanham Act. As discussed above, Plaintiff's trade dress includes the unique, distinctive, and non-functional designs and

appearances of the Orolay jacket®. Plaintiff has extensively and continuously promoted and used such trade dress in the United States. Through that extensive and continuous use, Plaintiff's trade dress has become a well-known indicator of the origin and quality of Plaintiff's products, and it has acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's trade dress had acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with the infringing products.

46.53.  Defendants' unauthorized use of Plaintiff's trade dress, in connection with their infringing products in direct competition with Plaintiff, violates §43(c) of the Lanham Act, 15 U.S.C. § 1125(a) and constitutes false designation of origin, at least because Defendants' uses of Plaintiff's trade dress are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Defendants' infringing products, at least by creating the false and misleading impression that their infringing products are manufactured by, authorized by, or otherwise associated with Plaintiff.

47.54.  On information and belief, Defendants' violation has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the striking similarity between the infringing products and Plaintiff's trade dress and Defendants' continuing willful disregard for Plaintiff's rights.

48.55.  Defendants' use of Plaintiff's trade dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's trade dress and products.

49.56.  Plaintiff is entitled to injunctive relief and to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1125(a), 1116, and 1117.

**COUNT III**
**VIOLATIONS OF ILLINOIS DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510 *et seq.*)**

50.57.  Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

51.58.  Plaintiff's trade dress is entitled to protection under the common law of Illinois. Plaintiff has extensively and continuously promoted and used its trade dress for years in the United States and the State of Illinois.  As a result of this, Plaintiff's trade dress has become a well-known indicator of the origin and quality of Plaintiff's products and acquired substantial secondary meaning in the marketplace.  In addition, Plaintiff's trade dress acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's trade dress in connection with their infringing products.

52.59.  Defendants' unauthorized use of Plaintiff's trade dress violates the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 et seq., at least by palming off/passing off their products as those of Plaintiff, by simulating Plaintiff's trade dress in an intentional and non-mistaken manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Defendants' products, and by creating the false and misleading impression that their infringing products are manufactured by, authorized by, or otherwise associated with Plaintiff.

53.60.  On information and belief, Defendants' violation has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the striking similarity between the

infringing products and Plaintiff's trade dress and Defendants' continuing willful disregard for Plaintiff's rights.

~~54.~~61.  Defendants' unlawful activities has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's trade dress and products.

~~55.~~62.  Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 815 ILCS § 510.

## PRAYER FOR RELIEF

~~56.~~63.  WHEREFORE, Plaintiff respectfully prays that this Court enter an order and judgment in favor of Plaintiff and against Defendants as follows:

(1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all others acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

    a.   using Plaintiff's trade dress or any reproductions, copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's trade dress;

    b.   passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using Plaintiff's trade dress;

    c.   committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff or the Orolay® trade dress;

21

    d.   further infringing the Orolay® trade dress and damaging Plaintiff's goodwill;

    e.   otherwise competing unfairly with Plaintiff in any manner;

    f.   manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which use Plaintiff's trade dress, or any reproductions, copies or colorable imitations thereof;

    g.   using, linking to, transferring, selling, exercising control over, or otherwise owning the Amazon marketplace accounts being used to sell or is the means by which Defendants could continue to sell infringing products; and

    h.   operating such online marketplace account or websites that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product using Plaintiff's trade dress, or any reproductions, copies or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with Plaintiff's trade dress.

(2) Entry of an Order against those in privity with Defendants and those with notice of the injunction, including Amazon, and that the same shall:

    a.   disable and cease providing services for any accounts through which Defendants engage in the sale of infringing products, including any accounts associated with the Defendants;

    b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of the infringing products; and

    c.   take all steps necessary to prevent links to the Defendant domain names and storefronts from displaying in search results, including but not limited to removal of any links or identifiers such as ASIN, etc.;

(3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trade dress be increased by a sum not exceeding the statutory limit;

(4) That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505;

(5) Both pre-judgment and post-judgment interest; and

(6) Award any and all other relief to Plaintiff that this Court may deem just and equitable.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ.

P. 38(b).

Dated: ~~February~~ October 12~~1~~, 2021          **YK LAW LLP**


/s/ Edward Chen
Edward Chen (CA Bar No. 312553)
YK Law LLP
125 South Wacker Dr. Suite 300
Chicago, Illinois 60606
(213) 401-0970
echen@yklaw.us

*Attorneys for Plaintiff Jiaxing Zichi Trade Co., Ltd*